## MARY HICKS et al. *v.* ANN E. WEEMS et al.

The incapacity of an administrator to purchase property on behalf of a succession, is not so absolute as to make his purchases utterly void.

Where an administrator, in seeking to collect a debt due the succession, which had its origin in the price of real estate which belonged previously to the succession, and which was subject to the vendor's privilege in favor of the succession, has the property sold and buys it in for the estate for a small part of the debt, leaving a large balance of the debt to be ranked among the active means of the estate—*Held*: That although such proceedings may have been irregular, they were not absolutely void, and when ratified by the heirs, their title to the property cannot be questioned by any one.

APPEAL from the District Court of the Parish of Rapides *Cullom*, J. *Mercer Canfield*, *W. B. Lewis* and *T. C. Manning*, for plaintiffs. *M. Ryan* and *Hyman & Cazabat*, for defendants and appellants.

MERRICK, C. J. "This is a petitory action, instituted by *Mrs. Hicks* and *Mrs. Speight*, sisters, and grand-daughters of *Mary Clark*, for the recovery of an undivided half of a tract of land, each of the plaintiffs being entitled to a fourth of the same.

"The tract of land in question belonged to *Mary Clark*, and was sold as a part of her succession. There is no dispute as to her title. She had but two children and heirs, both of whom were daughters. One of these daughters was the mother of plaintiffs. The other was the mother of *Terence* and *Kerly Scott*, who are the warrantors. These four grand-children (their mothers being dead) are the sole and equal heirs of the common ancestress, *Mary Clark*, and are each entitled to one-fourth part of her succession.

"One *Leeton* became the administrator of this succession, and subsequently tutor to the minors *Scott*. Proper proceedings were had in both capacities to legalize and effectuate a judicial sale of the property, and on the 29th day of June, 1835, the tract of land in question was publicly adjudicated by the Parish Judge to *Brewster* and *Weems*, for five thousand one hundred dollars, payable in one, two and three years.

HICKS
v.
WEEMS.

On the 13th February, 1840, *Daniel James* was appointed administrator of *Mary Clark's* succession. *Leeton* was dead, and there were debts still due and uncollected, chief among which were the notes given by *Brewster* and *Weems* for the purchase of this land. *Weems* had now become the owner of the land, by purchase from *Brewster* of his moiety, at a considerable advance over the price paid at the succession sale, a portion of which was to be discharged by the assumption of, and payment by *Weems* of *Brewster's* indebtedness for the original purchase.

" Soon after the appointment of *James*, suit was instituted to recover the amount of the three notes of *Brewster* and *Weems*, neither of which had been paid, and to enforce the mortgage upon the land. These proceedings resulted in the sale of the land, at which sale *Daniel James*, as administrator of *Mary Clark*, became the purchaser for the sum of sixteen hundred dollars.

" Subsequently, *Mrs. Ann E. Weems*, who had been separated in property judicially from her husband, purchased the land, as she alleges, from *Terence* and *Kerly W. Scott*. She shows no title sustaining the allegation made in her answer, but claims the ownership of the land, and asks that the *Scotts* be called in warranty ; who in their turn, admit that they sold the land, without mentioning their vendee, and deny that the plaintiffs have any right to judgment."

The principal grounds of defence to the action are, that *Daniel James*, the administrator, bought the land for his own use as an individual ; and, if the court should be of the contrary opinion, that then the sale was null, because minors were interested in the succession, and no family meeting advised, or decree of the court sanctioned the purchase ; because the administrator, acting in a fiduciary capacity, was prohibited from purchasing property under the pain of nullity, and because property cannot be acquired for a succession.

We think with the District Judge, that the intention of *James* was to purchase as administrator. It would not otherwise have been so expressed in the Sheriff's return, and in the deed to the purchaser. Moreover, the defendants appear to have recognized this sale as such, by taking title from two of the heirs of the succession.

The incapacity of the administrator to purchase property on behalf of a succession is not so absolute as to make his purchases utterly void. Indeed, there are certain cases in which his purchases would doubtless be considered valid. Take the case of the purchase of provisions and necessary supplies for a plantation, or for taking off a crop. Here his contracts for the sale would be so much in the nature of acts of administration, that no one would think of questioning them.

In the case at bar, the administrator was attempting to collect a debt which had its origin in the price of real estate which belonged previously to the succession, and which was subject to the vendor's privilege in favor of the succession.

Now, it cannot, we think, be doubted, that the administrator, as an act of administration, might have sued to enforce the resolutory condition for the non-payment of the price, and thus have brought back the property into the succession. The action of the administrator was much more advantageous than this to the succession, for, by his purchase of the property at Sheriff's sale, for a small part of the debt, it was returned, and the debt, for a large part, could still be ranked among the active means of the estate. Although the proceeding may have been irregular, it was not absolutely void, and the heirs having ratified the same, no one can now question their title ; much less can the debtor who has had a credit

upon the judgment for the price for which the property was adjudicated to the administrator. C. C. 1785; *Succession of Devereux,* 13 An. 34.

As the administrator did not attempt to purchase the property in his own name, it is idle to consider whether he might have done so.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be affirmed, with costs.