BREAUX, C. J.
This is an action by plaintiff for a judgment to have the defendants removed from their trust as joint administrators of the succession of the late Henry J. Sanders, who departed this life intestate on the 8th of November, 1905.
He left four heirs — three children of age — . two are the defendants, the third is a resident of the state of Arkansas, and the fourth is a minor grandson who is an interdict, represented by the plaintiff curator ad hoc.
Dr. Sanders was well and favorably known. For a number of years he practiced his profession — medicine—successfully. He in time became a sugar planter, and owner of a valuable sugar plantation.
The testimony shows that he was generous to his family and friends. He, none the less, acquired property of considerable value.
In the vicissitudes of business, he fell behind financially as will sometimes happen to the planter. I-Iis plantation was sold in foreclosure proceedings, and was adjudicated to the mortgage creditor.
On the same day the name of the daughter, who is now one of the administrators, and that of Dr. Sanders appeared of record as transferee of the adjudicatee, the mortgagee before referred to, each for one-half.
The place was bought in the year 1885 on credit, and in time it was paid for.
It continued to be cultivated until 1905, the latter part of the year, at which time Dr. Sanders departed this life.
This suit relates to the settlement of his succession.
We take up for decision the first issue in the order of the argument.
The Incomplete Inventories. This complaint of plaintiff cannot be of any avail unless it be shown that the heirs secreted property of the succession or knowingly and in bad faith withheld property ■ from the inventories.
The notary testified that he received no instructions. The defendants pointed out certain items of property, and the notary listed the undivided half of “Luckland” plantation, the plantation in question, with buildings and improvements, because he was informed that they were the property of the succession, and besides he was during two days at work in the clerk’s office searching the record in order to get a full list of the property, and he further states that if there were any omissions it was unintentional.
It does not appear that the defendants, who had not qualified as administrators, were instrumental in causing the omission of property from the list.
The attorney for the succession gave no special instructions in regard to the inventories and the property to be included.
The appraisers were upright men of the neighborhood.
The defendants subsequently qualified as administrators.
No demand was addressed to the court by plaintiff to have the inventories amended.
The property is not in danger of being lost, as every item will have to be accounted for.
Defendant heirs injuriously meddled with the assets from the 8th day of November, 1905, to the date that they respectively qualified, one in January and the other in March following.
*726 This is the next proposition urged by plaintiff.
It appears that an amount of $3,000 was in the hands of the commission merchants of the de cujus in the name of one of the administrators. On the draft of Mrs. Hickox it was transferred to her credit in bank.
It appears that between January 23d and November, 1905, on the order of the late Dr. Sanders, the account of his daughter (one of the administrators) was credited with a large amount. She claims that the $3,000 was hers in accordance with the order of her father, and not part of the succession fund, and for that reason she had placed it to her credit in the bank. It was in her name by order of her father before she drew it from the commission merchants and placed it in bank.
In this suit there is no necessity of determining whether or not it was hers; it is a question that must be left open to future investigation, as we do not deem it pertinent to the issues here. The trust reposed by her father, the instructions given by him to her, apparent interest in the property, and the fact that it was in her name on the order of her father relieves her from the charge of prejudicial wrongdoing that might arise under other circumstances.
There is this quite certain that, nevertheless, the administrators owe a strict accounting to the succession for every item owned by the succession.
There were other amounts drawn from these commission merchants during the period-before mentioned, placed in her name, at the instance of her father, she says, some time before the death of the de cujus. After his death, the account continued in her name.
The contention of plaintiff at this point is that no part of this amount should have been withdrawn without an order of court as it was all succession fund.
On the advice of counsel it was withdrawn; nearly all of it to pay the expenses of the plantation.
In order to further determine as far as necessary this point of dispute, we will have to go into particulars to some extent.
It appears by reference to the record that the “Luckland Plantation” on the face of the record was in the name of Dr. Sanders and that of his daughter, the said administrator.
He was aged and had been ill for some time. His daughter assisted him in the management of the plantation affairs, and evidently became quite useful to him. She rendered services evidently highly appreciated by her father. He sought relief in a sanatarium at some distance from the state accompanied by members of his family.
During his illness, expenses were incurred which were met by drawing from the fund in the hands of said merchants in her name. This was, as relates to amount of expenses, a small item as compared to the expenditure which had to be met soon after his death in November, 1905.
It will be noticed that this was the grind-season; there was a large crop in the field to be saved and manufactured into sugar. Delay at that time would have proven disastrous to the crop. The sum needed was taken from the amount in the hands of the commission merchants before referred to. The administrators furnished their own signatures as security for the amount in order to safeguard the interest of the merchants, who wished the business to be placed in that shape for their security. To save the crops funds were indispensable, and it was necessary to continue the plantation operations and management as previously. This was decidedly to the advantage of the succession. It resulted as expressed in figures in producing a crop which realized a handsome profit.
*728 It would have been best if the court’s orders could have been obtained before continuing with the sugar grinding.
Time was pressing, and in those moments from the necessity of the situation the tendency is always to take up and continue the work. On such occasions errors will be committed. When they are not inspired by the wish to take undue advantage they do not form good ground to dismiss the succession representative.
She had been placed in charge by her father.
The next ground of plaintiff’s objection is that an amount stated should not have been paid to the widow of the de cujus.
Special reference to the family will have to be made here.
The late Dr. Sanders was twice married. His children are all issue of the first marriage.
The second marriage dates from a time preceding the purchase of the hereinafter named plantation.
We infer that his second wife and present widow had means; she became the owner in her own right of the plantation known as “The Orescent Farm.”
The “Luckland” place as well as “Orescent Farm” were purchased subsequent to the last marriage.
It seems that the. first, the “Orescent Farm,” was owned exclusively by Mrs. Sanders. This was the information received by the heirs. It was thought by them that she had a community right in addition in “Luck-land” plantation.
During the marriage, defendants allege, Mrs. Sanders became the creditor of her husband for the sum of $19,000, an amount loaned to him. The late Dr. Sanders was anxious to pay this sum, and to that end arrived at an agreement with Mrs. Sanders. He thought that his second wife had some rights in “Luckland.” He wished to leave his interest in this place to his children free from all community rights; the result was that he agreed to pay this amount of $19,000, provided Mrs. Sanders renounced all right in “Luckland.”
On one of his last days, he called upon his children who were with him, and directed them by all means to pay this indebtedness and clear “Luckland” from all community rights.
This was accordingly done by the three heirs, representing three-fourths of the estate.
From the proceeds of the crop of 1905, the sum needed to pay this indebtedness was drawn from the hands of the commission merchant.
Plaintiff attacks this settlement, and questions the correctness of the payment from the succession fund.
We will not go much further in regard to this settlement than to state that in accounting hereafter defendants will have to prove the correctness of the settlement, and that they are entitled to the credit they claim therefor.
The payment of a debt in anticipation in order to extricate a succession from embarrassment is not cause for dismissal provided it is done in good faith, and provided the succession has been released from the burden of a legitimate indebtedness.
It is proper to state, however, that payment without an order of court does not close inquiry as to correctness of claim. In re La. Savings & Safe Deposit Bank in Liquidation, 40 La. Ann. 514, 4 South. 301.
We leave the question relating to the crop of 1905 and growing out of the fact that defendants drew money in accordance with the purpose before stated to take up questions relating to the crop of 1906.
We will first state that in the early part of 1906 defendants qualified as administrators; they filed a petition asking for an order of sale which was vacated, as we think properly, at the instance of plaintiff who appeared and *730 asked to have the order vacated. They were then left with the plantation on their hands; a large part of the crop> had been planted; they could not sell it nor could they very well under the circumstances remain quiet and indifferent and allow the crop to be lost and the plantation to lose much of its value. Over •300 acres of seed cane had been planted in the fall of the year preceding the crop of 1906, and other expenses incurred toward making the crop of that year. Cultivation •of the place became a matter of necessity. They applied to the court for authority which was declined on the ground that the court had no right to grant such authority.
In reference to this refusal, the district judge in his reasons for judgment says:
“Although the law does not provide for an ■administrator running the .plantation which belongs to the succession he administers there is no harm done. Certainly under the circum•stances of the present case it would not appeal to the judicial mind as a just reason for ■divesting the administrators of their trusts.”
The advice of the attorney for the succession was sought and he said, in substance, that the. crop should not be allowed to go to waste; the plantation should be cultivated; that they should use their credit in obtaining funds and continue the operations but not to take succession money unless absolutely necessary. He further stated that he thought that in carrying on the plantation under the •circumstances without an order of court defendants were not doing a wrong but conferring a benefit on the heirs.
One of the defendants as a witness stated that the loss would have been large had the operations of the plantation stopped.
As a result, the plantation was cultivated and the net proceeds, as shown by the account in the record, was in February, 1907, $28,-070.66
Generally the authorities hold that succession representatives cannot carry on plantation operations, incur liability, and bind the estate. This is the current of authority, but it is not unvarying, for occasions have arisen when plantations were cultivated, and afterward the actions of the succession representative approved in view of the emergency which called for action.
In Succ. of Sparrow, 39 La. Ann. 701, 2 South. 501, the court said that under the circumstances — somewhat similar here — it became the imperative duty of the administrator to cultivate the plantation, and held that the heirs were bound for the expenses necessary to keep up the place.
If for a reasonable time it became necessary to carry on a plantation it is proper that it should be done if thereby great loss is avoided.
Three-fourths of the interests gave expressed consent. The remaining fourth remained quiescent, remained silent. The curator interposed no objection. Properly enough at this time he is ready to reap any of the benefits which may have accrued.
The following decisions are also in point: Succ. of Wederstrandt, 19 La. Ann. 494; Miller v. Curtis, 23 La. Ann. 33.
Conceding for a moment that the authority to continue with the cultivation without an order of court was something which should not have been done even under the circumstances stated, what good would result if wé were to dismiss the administrators on that ground? It would only have the effect of delaying the accounting.
As to any loss — if; there has been loss of any kind — it must be considered and taken into account hereafter. Succession of Baum, 9 La. Ann. 412; Hicks v. Weems, 14 La. Ann. 629.
It does seem that there does not remain very much for the administrators to do. The time is approaching surely for fixing the distributive shares of the heirs.
The question of collation and others simi *732 lar are to be settled in partition proceedings, and such actions as may be necessary to show that there was no translation of the property if such can be shown.
The same may be said of the claim for rental; as exaggerated and unreal as plaintiff may think it is, it is properly to be brought up in the partition proceedings and the settlement of accounts. At this time it presents no ground to justify us in enforcing the statute, which requires the dismissal of a succession representative for unfaithfulness in his trust.
An attempt was made by the administrators to sell the property.
The opposition of plaintiff before the district court brought the attempt to an end.
The court, we are informed by the reasons for the judgment, deemed it inadvisable to permit the sale whilst serious charges of plaintiff were pending against defendants.
There was nothing concealed about the offer. We infer from the statement of the district judge that it was error to seek to sell the property at that particular time.
If administrators were dismissed from their trusts for every error though not prejudicial there would be quite a number dismissed.
It is generally that which is done which is of avail in matter of proceedings at law. Nothing was done in this instance save the offer to sell. The usual orders were obtained and advertisement made. There was, we take it, nothing concluded.
The next proposition advanced by plaintiff is that the administrators failed to deposit the funds of the succession in bank as required by statute and that they have drawn funds from the commission merchants for their personal use.
These funds were in the hands of the merchants of the late Dr. Sanders, and had been since the sale of the crops. The delay which occurred in making their settlement and before the balance was ascertained to be placed to the succession credit is not cause sufficient to apply the penal statute.
The practicable management of a plantation is attended with difficulties. It is easy to conceive how revenues might have been, increased and expenses diminished, delays-avoided, but, nevertheless, sometimes these-are all unavoidable and cannot be helped.
It remains that she, the administratrix, had a right on the face of the papers to part of' the fund sufficiently to apply it to plantation expenses.
We used the words “on the face of the papers” for we do not pass upon the right. We-do state, from appearances, she had sufficient interest not to be amenable to the penal statute. Moreover, in any event, her acts are not causes sufficient to dismiss the other administrator, Shelby Sanders.
We must say before concluding that this-case has special features.
The name of one of the defendants appear» of record as owner of one-half of the plantation. In these proceedings we have to consider the issues from that point of view. It follows that if she was the lessor of that half — as she somewhere said she was — she was entitled to the rental for the half. If, on the other hand, she was not lessor, but owner — and she cannot be considered as less than owner in this case — she was entitled to part of the proceeds of the crop in proportion at least to the extent of her interest. As a lessor she could have retained sufficient of the crop revenue to pay the rental due -her. As an owner she was entitled to part of the proceeds. If she failed to deposit part of the proceeds she is not liable to the penalty of dismissal.
But the administrators had deposited amounts, and they propose (and it is well that they should) to continue to deposit all amounts received. They have expressed the *734 intention (and they doubtless will), to observe strictly the statute from this time on.
For reasons stated, we think the judgment should be affirmed.
It is therefore ordered, adjudged, and decreed that the judgment appealed from is affirmed.
MONROE and PROYOSTX, JJ., dissent.