ROSE AMSTERDAM, Respondent, *v.* IGNACE I. APFEL, Appellant.

First Department, May 18, 1917.

Conversion — alleged agreement to purchase interest in lands with moneys advanced by plaintiff — evidence not establishing cause of action.

Action to recover moneys which the plaintiff alleged were advanced by her to be used by the defendant for the purpose of purchasing for the plaintiff a one-half interest in certain lands which were to be resold by the defendant and the profits from the sale equally divided between the parties, which moneys the plaintiff alleges were converted by the defendant to his own use. The defendant asserts that he received the money of the plaintiff under an agreement to give her one-half of any profits he might make by a personal purchase and sale of the property, after first repaying the plaintiff's advancement out of the proceeds of the sale. Evidence examined, and *held*, insufficient to establish a case of conversion and that a judgment for the plaintiff should be reversed and her complaint dismissed.

SCOTT, J., dissented, with opinion.

APPEAL by the defendant, Ignace I. Apfel, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 9th day of November, 1916, upon the verdict of a jury, and also from an order entered in said clerk's office on the 10th day of November, 1916, denying defendant's motion for a new trial made upon the minutes.

*Charles Goldzier*, for the appellant.

*E. Walter Beebe*, for the respondent.

DAVIS, J.:

Plaintiff sued in this action to recover $1,697.74, $1,500 of which she alleges she delivered to the defendant for the specific purpose of purchasing premises 505 and 507 Lafayette avenue, in the borough of Brooklyn, New York city, and which moneys she alleges were converted by the defendant. The circumstances surrounding the alleged conversion of the remaining $197.74 will appear later in this opinion.

The complaint alleges that while the defendant was acting as plaintiff's attorney, on or about June 27, 1912, upon his representation that premises 505 and 507 Lafayette avenue, Brooklyn, could be purchased for $1,500, subject to a mortgage then upon the premises *or thereafter* to be placed thereon, and could be resold at a profit, entered into an agreement with defendant whereby it was mutually agreed that the plaintiff should furnish to the defendant the sum of $1,500, and should pay one-half of any necessary expenses for mortgage and closing of title, etc., incident thereto; that the defendant would undertake to purchase the said property 505 and 507 Lafayette avenue, and 20 and 22 Kosciusko street, in the borough of Brooklyn, city of New York, and that the plaintiff should have a one-half ownership therein, and that the defendant would have the other one-half ownership, and that the defendant would take charge of the property, and that the profits arising from its resale should be equally divided between the plaintiff and the defendant.

The complaint further alleges that under the agreement defendant was to act as her attorney in said purchase, and that between June 27, 1912, and July 2, 1912, in compliance with the agreement she paid defendant $1,500, and that later, and in October, 1912, she paid him the further sum of $197.74 upon his representation that the latter was her share of the necessary expenses of getting the mortgage, examining title, etc. And there is the further allegation that the defendant has not purchased the said property above referred to, nor caused them to be conveyed to the plaintiff; that the said sum of $1,500 paid by the plaintiff to the defendant aforesaid was not used by defendant to purchase the property in question, nor any part thereof, but, on the contrary, the defendant has fraudulently converted the money to his own use; that the defendant's statement regarding the expenses of said premises was false and untrue and the plaintiff was not indebted to the defendant in the said sum of $197.74, paid to the defendant as aforesaid, nor any part thereof, and the defendant has converted the same to his own use.

The answer denies all of the material allegations of the complaint except that it admits that plaintiff paid him $197.74, and

that he did not cause the property to be conveyed to the plaintiff and that the $1,500 was not used by him to purchase the property.

The jury rendered a verdict for the full amount claimed.

It appears that originally the plaintiff with the other members of her family owned the Lafayette street premises in question. They entered into an agreement with Brown & Weiss to exchange it for certain property on Madison avenue, and the exchange was made. The defendant was plaintiff's attorney in this transaction. He induced Brown & Weiss to exchange the Lafayette street premises for defendant's premises on Cortlandt street. This gave to the defendant the control of the Lafayette street premises. He thereupon conveyed the Lafayette street premises to R. S. S. Company for $8,000 using for that purpose a deed which had been executed by the plaintiff and her family, but from which the vendee's name had been omitted. He afterwards wrote in the name of R. S. S. Company. As part of the transaction with R. S. S. Company defendant took back a lease from R. S. S. Company for the term of one year and ten months from the date of the lease June 28, 1912, with a privilege to purchase the premises any time prior to the expiration of the lease on May 1, 1914, for the sum of $8,500 cash, or $9,000 by paying $2,000 cash and $7,000 in a mortgage. The deed and lease referred to really constituted a mortgage. The various transactions took place between June 11, 1912, and June 28, 1912.

The defendant asserts that the plaintiff was cognizant of every step he took; that she paid him the $1,500 for a one-half interest in his transaction in return for which he agreed to give her one-half of any profits he made on a sale of the property, first repaying to her out of the proceeds the $1,500 she had paid him. On the other hand, the plaintiff denies that she knew anything about defendant's transactions as testified to by him, but asserts that she gave him the $1,500 to buy the property for her in return for which she agreed to give him one-half of the profits on a sale of the property after she had taken out the $1,500 paid by her. Plaintiff testified that defendant first broached the subject to her on the 21st or 22d of June, 1912. She thus describes the interview: "He called me away after

the dinner, before the dance, and he asked me if I had $1,500. I said, 'yes.' He said, 'how would you like to invest it in buying back your old property at 505 and 507 Lafayette Avenue? You know the value of the property, you don't have to go into it; we will buy that back if you will put up $1,500, and I will go to the Lawyers' Guarantee Trust Company,' I believe he said, ' and get a mortgage for $8,000, or I will sell the property which I expect to do within the next three or four months, and I will give you back your $1,500 and give you half of the profits.'"

She next saw defendant on June 27, 1912, when at his request she gave him a check for $100 on account and he gave her the following receipt:

"Received from Rose Amsterdam check for One hundred Dollars on account of Fifteen hundred Dollars to be paid by her for the purchase of 505–7 Lafayette avenue, Brooklyn, 40x200, for said sum plus ½ of any necessary expenses for mortgage closing of title, etc. Miss Amsterdam to have one-half interest in said property, I. I. Apfel to take charge of property and profits are to be divided equally. Balance of ($1400.00/100) Fourteen hundred Dollars to be paid by July 2nd, 1912.

"*June 27th,* 1912.

"IGNACE I. APFEL."

She further testified that defendant said that she would have the additional expenses of taking title, and that he would buy the property before the second of July, and dispose of it during that summer. On July 1, 1912, plaintiff gave defendant the remaining $1,400. She sailed for Europe the next morning. On her return she saw defendant many times and upon his demand paid him $197.79 as part of the expenses in connection with the property. She testified that she often asked defendant why he did not sell the property and that he always answered that he was waiting for a better market.

There was thus a sharp conflict between the plaintiff and defendant as to the nature and character of the transaction. Defendant denies the making of the agreement set up in the complaint, and claims that the $1,500 was the purchase price of one-half of his interest in the property. If such be the fact,

this judgment is wrong. In support of his contention defendant introduced in evidence an agreement between the plaintiff and himself dated July 1, 1912, concededly signed by the plaintiff. The agreement is as follows:

"Agreement made and entered into this 1st day of July, Nineteen hundred and twelve, between Ignace I. Apfel, party of the first part, and Rose Amsterdam, party of the second part.

"Witnesseth for and in consideration of the sum of Fifteen hundred ($1500.00) Dollars, receipt whereof is hereby acknowledged, and other considerations, and the agreement and terms referred herein and to be performed by Rose Amsterdam; Ignace I. Apfel does hereby sell, assign, transfer and set over to Rose Amsterdam a one-half interest in a certain lease made between himself and the R. S. S. Company, dated June 28th, 1912, for the premises known as Nos. 505 & 507 Lafayette Avenue, and 20 &. 22 Kosciusko Street, Borough of Brooklyn, City of New York. Said Ignace I. Apfel hereby retains exclusive control of the said property, and said Rose Amsterdam hereby constitutes and appoints Ignace I. Apfel as her attorney, and in her place and stead to dispose of her interest in the annexed lease, and to do anything and everything in connection with said premises that he may deem proper, hereby ratifying any and all acts done by him.

"Rose Amsterdam hereby agrees to pay one-half of the annual rent mentioned in said lease, a copy of which is hereto annexed, and to comply with all the covenants and condition therein contained. It is understood that each of the parties hereto shall have an equal one-half interest in and to said lease, together with the option to purchase the property therein contained, and that in the event of a re-sale thereof out of the profits to be realized Rose Amsterdam is to receive the sum of Fifteen hundred ($1500.00) Dollars, being the amount of her investment therein, and after the payment of all the necessary expenses incurred in connection with said property, the balance remaining shall be divided equally between the parties hereto.

"In the presence of

　　　　　　　"ROSE AMSTERDAM. [L. s.]
　　　　　　　"IGNACE I. APFEL. [L. s.]"

A copy of this agreement was left with plaintiff's sister, a woman of keen business sense, presumably because the plaintiff was to sail for Europe the next day, and her sister had charge of her papers.

The plaintiff says that defendant read this paper to her while she was writing the check for $1,400; that she thought it was the deed to the property, and that she had no idea that it referred to a lease or that she was buying an interest in the lease.

In the early part of the following October the plaintiff received from the defendant a statement of account containing among other things items of rent paid to the R. S. S. Company, under the lease, and items of expenses for the examination of the title and for recording the deed. On the other side of the account were entered amounts received by the defendant from certain tenants of the premises in question. The total expenses of the property are shown to be $581.59, and the total receipts $186, leaving an excess of expenses amounting to $395.59, for half of which the defendant received a check from the plaintiff. But before getting the check the defendant, on November 15, 1912, found it necessary to write a letter to the plaintiff drawing her attention to the statement of account between them and demanding the payment of the $197.79. Presumably the plaintiff then consulted the statement of October fifth. If she did so, the fact that thereafter she sent the check for $197.79, when taken in connection with the other fact that she executed the agreement of July first and then had a copy of it in her possession demonstrates that she knew and approved of the defendant's plan of handling the property.

Much has been made of the fact that the title of this property was not taken in the plaintiff's name. I find nothing in the evidence showing that it was an essential part of their agreement, even if we adopt her version of the transaction. On the contrary, it appears that both plaintiff and defendant expected the property to be sold while the plaintiff was absent in Europe. It was natural in that case that, in view of the plaintiff's great confidence in the defendant's ability, she would allow him to exercise his own judgment as to how the title should be taken.

Furthermore, there is nothing in the receipt for $100 of June 27, 1912, inconsistent with the defendant's claim that he sold the plaintiff a one-half interest in the premises in question. In this document the defendant acknowledges the receipt of $100 on account of $1,500 and of one-half the necessary expenses of obtaining a mortgage and closing title to be paid by the plaintiff for one-half interest in the property. The terms of this receipt are altogether consistent with the written agreement of July 1, 1912, and with the act of the defendant in demanding and of the plaintiff in paying $197.79 as her share of the expenses of the transaction.

At the commencement of this action the title to the property was still in the R. S. S. Company. After the action was begun the defendant, whose option to repurchase had been extended, paid the R. S. S. Company $8,000 and took a conveyance in his own name. He then borrowed $7,500 from the Lawyers' Title Company, secured by a mortgage, and then conveyed the property to a corporation, all of whose stock is owned by defendant.

It thus appears that defendant has absolute control of the property with the power to sell it and that under the agreement of July 1, 1912, between the plaintiff and defendant, the plaintiff is entitled to one-half of the profits that may be realized on a sale together with the return of her $1,500.

It is apparent that the plaintiff has not made out a case of conversion.

The judgment and order appealed from should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., LAUGHLIN and SHEARN, JJ., concurred; SCOTT, J., dissented.

SCOTT, J. (dissenting):

I dissent. In my opinion, upon the facts necessarily found by the jury as indicated by the verdict, and which are not without support in the evidence, the defendant was clearly guilty of converting plaintiff's money. The original agreement as testified to by plaintiff, and as confirmed by the receipt which defendant had her sign, was that defendant was to buy the Lafayette avenue property and that plain-

tiff was to have "one-half interest in said property." The natural and customary way to invest plaintiff with a half interest in the property would be to have her named as a grantee in the deed, but it is proposed to reverse the judgment and dismiss the complaint upon a mere surmise, unsupported by any evidence, that it was understood between the parties that defendant was to take title in his own name. But even if this was the understanding the defendant did not carry it out except for a brief period. Even now the title does not stand in his name, but in that of some corporation with whom plaintiff has no contractual relation and over which she has no control. It is true that it is said, in a very vague way, that defendant controls this corporation, but I fail to see how that fact helps the plaintiff. As to the supposed authorization to defendant to take a lease of the property instead of a deed the jury were entitled to accept plaintiff's story that she did not understand the nature of the paper which she was induced to sign.

The net result of the whole transaction is that defendant, a lawyer, induced his client to intrust to him $1,500 wherewith to purchase a piece of property in which she was to have a one-half interest. The title to the property has been put in a corporation with which she has no contract and no relations; her money has been used to purchase the property, and she has no right or interest therein, except perhaps the very problematical and doubtful one of suing the corporation. Even now defendant, although he claims to control the corporation which owns the property, makes no tender of any deed, declaration of trust or other instrument recognizing in a tangible way plaintiff's interest in the property. A clearer case of conversion it would not be easy to find. And yet it is proposed not only to reverse plaintiff's judgment, founded upon a verdict arrived at upon conflicting evidence, but even to dismiss the complaint.

Judgment and order reversed, with costs, and complaint dismissed, with costs.