**In the Matter of**
**THE ESTATE OF CORNELIUS COMSTOCK BELOW,**
**also known as CORY BISHOP, Deceased**

Probate No. 33 — 1956
District Court of the Virgin Islands
Div. of St. Thomas and St. John

May 1, 1958

*See, also, 162 F. Supp. 88*

WILLIAM W. BAILEY, ESQ., Charlotte Amalie, Virgin Islands, *for petitioner*

CROXTON WILLIAMS, ESQ., Charlotte Amalie, Virgin Islands, *for respondent*

MARIS, *Circuit Judge*

Ethel May Below, generally known as Ethel May Bishop, has requested a review by the judge of this court, pursuant to 4 V.I.C. § 36(5), of an order of the District Court Commissioner revoking the letters of administration c.t.a. which were issued to her by the court on February 11, 1957 in the estate of her late husband, Cornelius Comstock Below, also known as Cory Bishop. The action of the Commissioner was taken on petition of Antilles Enterprises, Inc., alleging that it is a creditor of the estate in the sum of $34,134.92, that 20 shares of its stock were

actually owned by the decedent at the time of his death on September 17, 1956, whereas 10 of those shares have been and are claimed by the administratrix to be her individual property, and that by reason of the conflicting claims of the estate and the administratrix personally to those 10 shares of stock the administratrix can no longer properly administer the estate. The administratrix filed an answer to the petition admitting her personal claim to the 10 shares of stock in question under an assignment from the decedent on April 16, 1955, but denying that conflicting interests are involved or that she can no longer properly administer the estate. She also filed what she described as a "separate and affirmative defense and counterclaim" to the petition in which she claimed damages of $3,000,000. After a hearing, the Commissioner revoked the letters of administration c.t.a. issued to Mrs. Bishop and dismissed her counterclaim without prejudice.

■ ■ At the argument before me counsel for Mrs. Bishop stated that she did not press her request to review the dismissal of her counterclaim. I will accordingly consider only the question whether the action of the commissioner was proper in revoking the letters of administration which had been issued to her. In considering this question two legal propositions must be kept in mind. The first is that as widow of the decedent Mrs. Bishop had the primary legal right to letters of administration c.t.a., on his estate, the executor named in the will having declined to accept the trust. 15 V.I.C. §§ 234, 236. And the second is that letters of administration having been thus properly granted to her they may only be revoked upon one of the statutory grounds, namely that she has become of unsound mind, that she has been convicted of a felony or a misdemeanor involving moral turpitude, or that she has in some way been unfaithful to or neglectful

of her trust to the probable loss of the petitioner. 15 V.I.C. § 240(b).

■ The petitioner obviously seeks to rely upon the third statutory ground by asserting that Mrs. Bishop is making a personal claim to 10 shares of its stock which as administratrix she should be claiming on behalf of the estate for the benefit of creditors. But while it is true, as was held by the Commissioner in this case, that a claim by an administrator of a personal interest in the assets of the decedent's estate adverse to the claims of others interested in the estate may be treated as adequate ground for the revocation of his letters of administration, it does not follow that every assertion by an administrator of title to property which creditors or heirs assert belongs to the estate is ground for his removal from office in the absence of bad faith on his part. Trevathan v. Grogan, 1925, 210 Ky. 694, 276 S.W. 558; In re Drummond's Estate, 1917, 100 Misc. 78, 165 N.Y.S. 78; Hansell v. Hickox, 1908, 121 La. 721, 46 So. 784. As we have seen, our statute does not make the mere existence of an adverse interest, without more, a ground for removing an administrator. To justify that drastic action it must appear from the facts of the case that the conflict of interest is so substantial and direct as to render it impossible for the administrator to administer his trust faithfully or that he has in fact proved unfaithful to his trust.

■ I turn, then, to the facts of this case, as they were shown at the hearing before the Commissioner. It appears from the evidence offered by the petitioner that on April 16, 1955 the decedent owned, subject to the terms of a stockholders' agreement dated June 12, 1954, between Charles Redfield Vose, the decedent, David Jenckes and Antilles Enterprises, Inc., at least 20 shares of stock of Antilles Enterprises, Inc., the certificate or certificates evidencing which shares were in the possession of Vose

304

pursuant to the terms of paragraph 1[1] of the agreement and are still in the possession of his executors,[2] and that on April 16, 1955 the decedent assigned 10 of these shares of stock of Antilles Enterprises, Inc., to George T. Kelly III, Trustee for his wife, Mrs. Bishop, by a written assignment in the following form:

"For value received, I, Cory Bishop, hereby sell and assign and transfer unto George E. Kelly, III, Trustee for Ethel May Pressey Below (or Bishop) ten (10) shares of the capital stock of Antilles Enterprises, Incorporated, standing in my name on the books of the said corporation, and do hereby irrevocably constitute and appoint George T. Kelly, III, Trustee as aforesaid, my attorney to transfer the said stock on the books of the within-named company with full power of substitution in the premises, subject only to the terms of the stockholders' agreement of June 12, 1954. Dated, April 16, 1955, in presence of —

Joseph Willestein            Cory Bishop"

The assignment was not accompanied by the stock certificate, the latter being as above stated, in Vose's possession. The petitioner contends that for this reason as well as because it was exercised without the consent of Vose and, therefore, in violation of the stockholders' agreement,

---

[1] "1. The Corporation has been organized in the Virgin Islands for One Hundred (100) shares of common stock at One Hundred ($100.00) Dollars per share. Title in both aforesaid property in St. Thomas and St. John ventures are to be put in the Corporation which will assume the mortgages thereon, and the debt for all moneys advanced by Vose is to be owned and the stock issued in following proportions:

| | |
|---|---|
| Vose | 50 Shares |
| Bishop | 35 Shares |
| Jenckes | 15 Shares |
| Total | 100 Shares |

"The consideration for the issuance of all shares shall be the transfer of all interests in Estates Rustenberg, Beverhoudtsberg, Guinea Gut and Sans Souci (St. John) to the Corporation and the transfer by Bishop to the Corporation of the $50,000 paid by Vose for his interest in the aforementioned estates. Bishop and Jenckes are immediately to endorse their certificates for their shares and deliver same to Vose to hold until Vose is repaid his advances, when the stock is to be redelivered to them. Meanwhile, they have the right to vote on stock, but all dividends, if any, are to be applied to reduction of debt due Vose. Any salaries to be paid shall be reasonable and approved by the parties hereto. Accountings shall be rendered to Vose of corporate activities and finances at least every three months."

[2] Vose died on July 10, 1957.

305

the assignment gave no rights to Mrs. Bishop. These contentions are wholly without merit. For the stockholders' agreement itself, by paragraph 2,[3] expressly authorized each party thereto, without the consent of the others, to "transfer all or part (of his stock) as gift to or for benefit of wife or other member of his direct family, who shall hold it subject to terms of this agreement." Clearly that is exactly what the decedent did by his assignment of April 16, 1955 to his wife's trustee. Accordingly the assignment did not require the consent of Vose. Nor does the fact that the assignment was made apart from the stock certificate render it invalid. For this also was contemplated by the parties in view of the provisions of paragraph 1 that Vose should hold all the certificates until he was repaid his advances to the corporation and of paragraph 2 that the parties might nonetheless transfer stock to their wives. Moreover Section 10, Chapter 30, Title II, of the former Code of St. Thomas and St. John, now 13 V.I.C. § 150, being section 10 of the Uniform Stock Transfer Act, provides:

"An attempted transfer of title to a certificate or to the shares represented thereby without delivery of the certificate shall have the effect of a promise to transfer and the obligation, if any, imposed by such promise shall be determined by the law governing the formation and performance of contracts."

The assignment executed by the decedent on April 16, 1955 was undoubtedly as between the parties a valid contract of assignment. It follows that the assignment bound the decedent and passed to Mrs. Bishop's trustee the

[3]"2. The stockholders agree that so long as they are alive, each shall not without consent of all otherwise encumber or dispose of the stock he now owns; or may hereafter acquire, except he may transfer all or part as gift to or for benefit of wife or other member of his direct family, who shall hold it subject to terms of this agreement. No stockholder may sell his stock until indebtedness to Vose has been paid off, except with his written consent, and all certificates of stock of the Corporation owned by stockholders shall be endorsed with following statement:
" 'The shares of stock represented by this certificate are subject to the terms of an agreement between the stockholders and corporation dated November 25, 1953, a copy of which has been filed at the Office of the Corporation.' "

306

equitable title to the 10 shares of stock in question, if not the legal title thereto. Smith v. Lingelbach, 1922, 177 Wis. 170, 187 N.W. 1007; Parsons v. Lipe, 1933, 158 Misc. 32, 286 N.Y.S. 60, affirmed Parsons v. First Trust & Deposit Co., 269 N.Y. 630, 200 N.E. 31; Johnson v. Johnson, 1938, 300 Mass. 24, 13 N.E.2d 788; In re Merrick's Estate, Ohio Prob. 1955, 133 N.E.2d 919.

■ It thus appears that by his assignment of April 16, 1955 the decedent validly transferred to a trustee for Mrs. Bishop his entire interest in the 10 shares in question, subject only to Vose's right to retain the certificate for the shares under paragraph 1 of the stockholders' agreement until repaid his advances to the corporation, and any right which he might have under paragraph 4[4] of the stockholders' agreement, in case he should survive Bishop, as in fact he did, to purchase these 10 shares as well as those shares then actually held by Bishop's Estate at their book value without allowance for good will.

■ ■ It will thus be seen that the administratrix, Mrs. Bishop, has in fact no claim against the decedent's estate,

[4]"4. In the event of death of Vose, the survivors, together, or by the other if one refuses, shall have the right to purchase from Vose Estate, his stock at a price which shall be the unpaid amount of moneys advanced by him, plus Vose's share of undistributed actually realized profits of Corporation up to time of his death, to be calculated by book value on said date.

"Payment for Vose stock shall be made by paying ten (10%) percent on the exercise of the option and within six (6) months after qualification of personal representative of Vose, and the balance of ninety (90%) percent by three (3) notes for thirty (30) percent each, with interest, one for each of three (3) successive years. While not in default, the purchasers shall have voting and dividend rights, and on full payment shall receive back their stock if then in the hands of Vose or his Estate plus all of Vose stock duly endorsed for transfer. Purchasers have privilege of prepayment of unpaid amounts on Thirty (30) days written notice. In the event said option is not exercised against Vose Estate, the Corporation shall have a maximum of five (5) years to pay all of said debt; notwithstanding the provisions of Paragraph Five (5) hereof.

"In case of death of either Bishop or Jenckes, Vose and the other survivor, together, or the other if one refuses, shall have the right to purchase from decedent's estate, his stock at book value, but no allowance for good will, payments to be made one-quarter (¼) on exercise of the option to purchase and within six (6) months from qualification of deceased's representatives, and by three (3) notes for balance, one for each of three (3) successive years with interest, and with privilege or prepayment. While not in default, purchaser shall have voting and dividend rights, and on full payment, shall receive decedent's stock duly endorsed for transfer."

her claim being solely against the corporation and Vose's Estate for the shares assigned to her trustee by the decedent in his lifetime, or for the value of those shares. Moreover the conclusion is inescapable from the facts that the decedent's estate has no valid claim against Mrs. Bishop for the 10 shares which the decedent assigned to her trustee in his lifetime since he then parted with his equitable interest in those shares retaining only the duty to see that legal title was transferred to his assignee. The rights of his estate can rise no higher than those which he had when he died. It follows that there is no basis for holding that Mrs. Bishop has an interest adverse to the estate which will prevent her from faithfully administering her trust as administratrix.

In considering the petitioner's contentions I cannot ignore the fact that Vose has asserted in a claim to purchase the Bishop stock which counsel who here represent Antilles Enterprises, Inc., filed on his behalf in this decedent's estate, that the Bishop stock had a book value, exclusive of good will, of $1 only, and he claims the right under paragraph 4 of the stockholders' agreement to purchase the stock for that nominal sum. This is controverted by the administratrix but if it is true, as counsel for Vose asserts, the stock will obviously not provide a fund for the payment of the claim of Antilles Enterprises, Inc., even if Mrs. Bishop's 10 shares were to be included in the estate. However, a consideration of the litigation now pending in this court to which Mrs. Bishop, the Bishop Estate, Antilles Enterprises, Inc., and the Vose Estate are parties, makes it clear that the only real controversy at present involving these parties is between the Bishop Estate and Mrs. Bishop on the one hand and Antilles Enterprises, Inc., and the Vose Estate on the other. This is the controversy with respect to the right of Vose, under the stockholders' agreement, to purchase the stock of Bishop

and his transferee, Mrs. Bishop, in Antilles Enterprises, Inc., and with respect to the amount of the purchase price which must be paid for that stock if he is entitled to purchase it. In that basic controversy Mrs. Bishop's personal interests and those of the Bishop Estate are the same.

The order of the Commissioner revoking the letters of administration c.t.a. heretofore granted to Ethel May Below will be vacated and the petition of Antilles Enterprises, Inc., for the revocation of said letters will be dismissed.