JAMES W. LANE and Others, Appellants, *v.* ORIN A. BARNARD, Respondent.

First Department, January 10, 1919.

Corporations — agreement between stockholders who were employees of a corporation and the corporation for the purchase of stocks and bonds upon the decease of any party to the agreement or upon his severance of his connection with the corporation — refusal of party who had voluntarily severed his connection with the corporation to accept the amount offered for his common stock — suit for specific performance — evidence — book value of stock defined — good will as item of value.

A contract in writing between stockholders in the employ of a corporation and said corporation by which it was agreed, among other things, that in the event of the death of any of the parties while connected with the corporation or on the severance of his connection therewith the other parties, or such of them as might elect, as therein provided, should have the exclusive option and privilege of purchasing all of his holdings of stock and bonds in the corporation as the same might exist at the date of his decease or severance otherwise of his connection with the corporation. It was also provided that "the price of the common stock shall be the actual book value thereof, but not less than par, together with an adjustment of the accrued proportion of the regular dividend." One of the parties to the agreement who had voluntarily severed his connection with the corporation refused to accept the offer for his bonds and stock upon the ground of the insufficiency of the amount offered for the common stock and claimed that the books and records of the corporation at that time omitted to contain any allowance for the value of the good will of the business.

In a suit for the specific performance of the agreement it appeared that the books of the corporation originally contained an item of good will which was subsequently reduced and finally eliminated; that the defendant in his official capacities as secretary and treasurer had access to trial balances which showed the item of good will and had also signed tax reports showing said item, and also that it had been subsequently eliminated.

*Held,* that a judgment in favor of the plaintiffs for specific performance should be entered;

That a finding that the defendant was not aware, when he entered into the contract and when he severed his connection with the corporation, that good will was not carried on the books as an asset, was against the weight of the evidence.

The book value of stock ordinarily means the value thereof as shown by the assets and liabilities as carried on the books of the corporation and this is what was intended by the contract in question.

APPEAL by the plaintiffs, James W. Lane and others, from an interlocutory judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 26th day of June, 1918, upon the decision of the court after a trial at the New York Special Term.

The judgment directed among other things that an accounting be had.

*Frederic R. Kellogg* of counsel [*Kellogg, Emery & Cuthell,* attorneys], for the appellants.

*Lanier McKee* of counsel [*Arthur William Barber* with him on the brief; *Hervey, Barber & McKee,* attorneys], for the respondent.

LAUGHLIN, J.:

This is an action for the specific performance of a contract in writing between James W. Lane, F. Coit Johnson and Edward W. Spurr, as parties of the first part, and the defendant and John M. Tallman, Jr., Fuller E. Callaway, and William H. Tobey, as parties of the second part, and J. H. Lane & Co., as party of the third part, under date of April 2, 1914, by which it was agreed, among other things, that in the event of the death of any one of the parties, all of whom were stockholders and in the employ of said company, while connected with the company or on the severance of his connection therewith, the other parties thereto or such of them as might elect, as therein provided, should have the exclusive option and privilege of purchasing all of his holdings of stock and bonds in the company as the same might exist at the date of his decease or severance otherwise of his connection with the company. The defendant voluntarily severed his connection with the company on the 27th of March, 1917, and thereupon the appellants elected to take his bonds and stock in the company pursuant to the provisions of the contract and made a formal offer therefor, which he declined on the ground of the insufficiency of the amount offered for the common stock. With respect to the terms of purchase in such event the contract provided as follows: " The price of the said bonds shall be par and interest; the price of the said preferred stock shall be par with an adjustment of the accrued proportion of

the regular dividend, and the price of the common stock shall be the actual book value thereof, but not less than par, together with an adjustment of the accrued proportion of the regular dividend." The amount offered by plaintiffs for the common stock owned by the defendant was $180.885 per share, which was the actual book value thereof as shown by the books and records of the company at that time. The ground upon which the defendant refused the offer and on which his refusal was sustained by the trial court, is that the books and records of the corporation at that time omitted to contain any allowance for the value of the good will of the business.

It appears that the company was incorporated under the laws of the State of New York on the 31st day of March, 1903, for the purpose of dealing in cotton fabrics and yarns and that it took over a copartnership business which had been conducted in the same name and issued to the copartners bonds and common and preferred stock therefor. In the books of the corporation as originally opened there was contained an item in the ledger of $200,000 as an asset consisting of good will. This item was continued on the books as an asset for the same amount until the 1st of August, 1910. The defendant had been in the employ of the copartnership and continued in the employ of the corporation, but he did not become a stockholder until the 2d of April, 1906, when he acquired 228 shares of common stock pursuant to an option agreement by which the then stockholders gave to him and other employees an option to purchase stock, which in most respects is similar to the agreement the specific performance of which is sought herein.

According to the testimony of the defendant he was aware at the time that agreement was made that the item of good will was carried as an asset on the books, and he says it was then and subsequently represented to him by the plaintiff Tallman, who was assistant treasurer and attended to the duties of the office of treasurer, that the good will would increase as the business would increase. The defendant became a director and assistant secretary in 1908 and secretary in 1909 and continued to be a director and secretary until he severed his connection with the company. After the defendant's first purchase of stock he acquired additional stock from time to

time and sold some of his stock, and according to his testimony he acted in buying and selling on the advice of the plaintiff Tallman with respect to the price of the stock. At the time he severed his connection with the company he owned 713 shares of preferred stock and 951 shares of the common stock. It was stipulated that the item of $200,000 for good will was carried on the ledger as an asset until August 1, 1910, when it was in effect reduced by $50,000 by bookkeeping entries, and it was further likewise reduced by a like amount on the 16th of March, 1911, and wholly eliminated by like entries on the 30th of September, 1911. The practical effect of these entries was to reduce the surplus profits by the amount of the good will as theretofore carried on the books and to charge the amount theretofore represented as good will to profit and loss. It does not appear that this was done pursuant to any formal action of the board of directors and it does not expressly appear by whose direction it was done. Trial balances, showing by items the company's assets and liabilities, were presented quarterly to the board of directors. It is to be inferred that an item of good will was shown as an asset on these trial balances until September 30, 1911, for it was stipulated that no trial balance thereafter showed any item of good will as an asset. The defendant in his official capacities as secretary and director attended the meetings of the board of directors and had access to these trial balances, but he testified that he never examined them and was not aware until after he severed his connection with the company that the item of good will had not been continued on the books of the company. It appears by the cross-examination of the defendant that he signed reports made to the tax officers of the State of Massachusetts for the years from 1908 to 1916 inclusive and that these reports for the first three years contained good will as an asset of $200,000 and that the report of 1911 showed it as $150,000, and that the subsequent reports contained no item of good will as an asset; but he testified, in effect, that his recollection with respect thereto was indistinct and that he may or may not have read them and that he probably signed them by request and did not prepare them. He also testified that he did not know whether or not Tallman, in suggesting purchasing or selling prices of stock, took into

consideration the good will as an asset. The defendant in his letter of resignation as secretary and director on March 27, 1917, stated that he would like to hear from Tallman as soon as convenient with regard to his stockholdings " with figures showing the book value; also value of the ' good will.' "

The plaintiff Callaway testified that he had an interview with the defendant about two days after the latter's resignation and that the defendant then stated that the stock was worth more than the book value because the good will was left out in computing the book value, and the defendant's only denial of this is that he did not remember having made such a statement. Another of the plaintiffs and three employees of the company, who were negotiating a purchase of stock at the time, testified that at a conversation between them at which the defendant was present in the early part of 1915, it was explained in effect that there was no good will carried as an asset of the company; but the defendant claimed that he was some distance from the others who had the conversation and that he did not remember hearing such a statement.

The trial court found that the defendant was not aware when he entered into the contract and when he severed his connection with the company that good will was not carried on the books as an asset of the company. These findings, we think, are clearly against the weight of the evidence and we are of opinion that the evidence satisfactorily shows that he was aware of the material facts with respect thereto. The book value of stock ordinarily means the value thereof as shown by the assets and liabilities as carried on the books of the company, and that this was intended by the contract is made quite plain by the adjective " actual," by which it is to be inferred that if the severance of connection with the company was at a time between the periods for trial balances the preceding trial balance should be brought down to that date according to the financial condition of the company as shown by the books during the intervening time. There is no hardship to the defendant in so construing this contract, which was between stockholders who were employees of the company and who were at liberty to continue as such or to sever their relations, as did the defendant, knowing that their fellow-stockholders would in such event become entitled to

acquire their common stock at its actual book value without regard to any good will, which in all cases is more or less an uncertain quantity.

The appellants claim that the trial court erroneously excluded documentary evidence tending to show that all purchases and sales of the stock were made practically upon a basis of the book value thereof without any allowance of value for the good will, and we are asked to receive these exhibits in evidence, but in the view we take of the case they are immaterial.

It follows, therefore, that the interlocutory judgment should be reversed, with costs to appellants, and the findings and conclusions of law inconsistent with these views reversed and appropriate findings and conclusions of law in accordance therewith made, and final judgment entered in favor of plaintiffs for the specific performance of the contract as prayed for, with costs.

CLARKE, P. J., SMITH, SHEARN and MERRELL, JJ., concurred.

Interlocutory judgment reversed, with costs, and final judgment directed to be entered in favor of plaintiffs for specific performance of the contract as prayed for, with costs. Order to be settled on notice.