### MILLS *v.* RICH.

1. GOOD WILL—DEFINITION—WORDS AND PHRASES.

Good will of a business is based upon the prospective hypothetical profits to result from voluntarily continued patronage of buying public, and said term is generally used as indicating that element of value which inheres in the fixed and favorable consideration of customers arising from an established and well-conducted business.

2. BOOK VALUE—BASIS OF VALUE.

> The book value of a business is based upon the actual cost of the stock of merchandise and accounts on hand less such depreciation as has actually accrued.

3. PARTNERSHIP—ACCOUNTING—GOOD WILL—BOOK VALUE.

> Employee of partnership entitled to one-thirteenth of profits and book value of business under written certificate purchased by him, who was given his share of profits and tendered his share of price for which business was sold, is not entitled to accounting for value of good will where no good will value was carried on books, no claim made that books were not correct, and no proof offered of value of good will or that property and business were worth more than they brought.

Appeal from Oakland; Doty (Frank L.), J. Submitted January 8, 1930. (Docket No. 54, Calendar No. 34,658.) Decided March 6, 1930.

Bill by Alex. R. Mills against Arthur C. Rich and others for an accounting and other relief. From a decree for plaintiff for less than amount claimed, he appeals. Affirmed.

*E. L. Phillips* (*Milton E. Mills,* of counsel), for plaintiff.

*Pelton & McGee,* for defendants.

POTTER, J. Plaintiff filed a bill in equity in Oakland county circuit court for an accounting, a receiver, and an injunction. From a decree for plaintiff for less than the amount claimed, he appeals. Defendant Arthur C. Rich and Charles G. Freeman, now deceased, were, for many years, copartners in the hardware business in Pontiac. Plaintiff was an employee. After he had worked for the partnership for some time, a certificate, for which he paid $1,024, was issued and delivered to him, in form as follows:

"Capital Stock $13,000.00          Share Each $10.00

"This certifies that Alex R. Mills is entitled to 100 shares of ten dollars each of the capital stock of the A. C. Rich hardware business and to all earnings of such shares, the stock is transferable on the books of the company, not incorporated, only upon surrender of this certificate, properly indorsed and only when persons in whose name it stands is free of indebtedness to the company, either by note or accounts, and the stock represented by this certificate is to be a security to the company for any indebtedness to the company of the party in whose name it stands and all earnings and dividends will apply on such indebtedness.

"This certificate is given by the company and received by the owner (the holding of certificate being acquiescence of terms) with the understanding that the name of the owner, or holder hereof, does not appear as a joint owner in the business and that the holding of this certificate does not carry the right to obligate the company in any manner or way and any such obligation as between the company and a third party is void.

"Further, that in the event of party to whom this certificate is issued, discontinuing from employ of the company, the company retains the right to purchase this certificate at value, claimed by holder, but not to exceed the book value of this company.

"A. C. RICH, Manager."

Some years afterwards another certificate was issued and delivered to him, in all respects identical with the one above quoted, except the capital stock was stated as $26,000, and plaintiff as the owner of 200 shares. From time to time, after the original certificate was given, until plaintiff left the firm, dividends from the earnings of the hardware business were paid to plaintiff in addition to his wages as an employee. A dispute arose between the par-

ties over a bill rendered by plaintiff for extra time claimed to have been put in by him, and he severed his connection with the defendants. Defendant Rich tendered plaintiff a check for $1,732.63, which was refused. Defendants continued to run the business for some time, when the hardware stock was sold for $8,250, and the plumbing and heating business for $1,600, and the building in which it had been carried on leased by the owner, defendant Rich, to other persons. Upon the hearing of the order to show cause why an injunction should not issue as prayed, the parties stipulated the injunction should be denied if defendants gave a $10,000 bond to pay any amount which might be found due to plaintiff, and such bond was given and approved. What the relationship between the parties might have been as to other parties during the continuance of the business is not here involved. This case involves the rights of the parties between themselves after the termination of the partnership, and we think such rights are governed by the written certificate of the partnership taken and accepted by the plaintiff. It gave to the plaintiff the right to one-thirteenth of the profits of the company during the term the arrangement was continued. There is no proof the plaintiff did not receive such profits. There is proof he did receive them. Plaintiff discontinued from the employ of the company, and by the terms of the agreement the company thereupon had the right to purchase plaintiff's interest at a value claimed by him but not to exceed the book value of the company. There is no claim the check tendered by the defendants to the plaintiff did not cover the book value of the company in accordance with the books. It is claimed, however, that plaintiff was entitled to be compensated for the good will of the business of

defendants, which good will he claims was worth $100,000. Good will is based upon the prospective hypothetical profits to result from voluntarily continued patronage of the buying public. The term is generally used as indicating that element of value which inheres in the fixed and favorable consideration of customers arising from an established and well-conducted business. *Des Moines Gas Co.* v. *Des Moines,* 238 U. S. 153 (35 Sup. Ct. 811). The book value of a business is based upon the actual cost to the defendant of the stock of merchandise and accounts on hand less such depreciation as has actually accrued. Ordinarily, a stock of merchandise is worth what it will fetch in the open market. Here, plaintiff knew for two or three years the defendants were seeking to sell. They finally did sell. There is no proof the property and business was worth more than it brought. Defendant had the management of the business. If the good will of the business was worth such a fanciful sum as is claimed by plaintiff, some proof of its value should have been produced. No such proof was offered. No good will was set up on the books of the company. No claim is made the books were not correct. There is no claim that the amount tendered was not based upon the book value as shown by defendants' books. We think the trial court made a correct disposition of the case, and its decree is affirmed, with costs.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, SHARPE, FEAD, and NORTH, JJ., concurred.