ALFRED M. SCHAFFER, IRVING L. YOUNG,
JAMES ALDERMAN EVANS, JR., and
WILLIAM HOUSTON EVANS,
Executors of the Estate of Charles R. Vose, Deceased
v.
ETHEL MAY PRESSEY BELOW,
also known as ETHEL MAY BISHOP,
individually and as Administratrix C.T.A. of the Estate of
Cornelius Comstock Below, also known as Cory Bishop, Deceased,
DAVID JENCKES and ANTILLES ENTERPRISES, INC.

Civil No. 230-1957

ETHEL MAY BISHOP, individually and as Administratrix C.T.A.
of the Estate of Cory Bishop, Deceased
v.
ALFRED M. SCHAFFER, et al.,
Executors of the Estate of C. R. Vose;
ALFRED M. SCHAFFER, et al.,
Officers and Directors of Antilles Enterprises, Inc.;
ANTILLES ENTERPRISES, INC.;
and WARD and VIRGINIA FRENCH

Civil No. 138-1958

District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

June 23, 1959

*See, also, 174 F. Supp. 505*

MAAS and BAILEY, Charlotte Amalie, St. Thomas, Virgin Islands (WILLIAM W. BAILEY, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, of counsel), *for Alfred M. Schaffer, et al.*

CROXTON WILLIAMS, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for Ethel May Pressey Below, et al.*

MARIS, *Circuit Judge*

From the admissions in the pleadings and the evidence in these consolidated cases, I make the following:

### FINDINGS OF FACT

1. On July 27, 1953, Charles Redfield Vose, Cory Bishop (also known as Cornelius Comstock Below) and David Jenckes entered into a joint venture for the development of land on the Island of St. John, Bishop and Jenckes contributing approximately 850 acres of land and Vose contributing $50,000.00 in cash. It was agreed that the division of the profits of the joint venture was to be 30% to Vose and 35% to each of the other two venturers. It was also agreed that if it should be decided to incorporate, the stock would be divided in the same ratio.

2. On September 2, 1953, the joint venturers agreed to add to the joint venture the purchase of approximately 635 acres of land in St. Thomas, the funds for the purchase to be advanced by Vose and to be repaid to him by the joint venture.

3. On November 25, 1953, Vose, Bishop and Jenckes organized under the laws of the Municipality of St. Thomas and St. John a corporation under the name of Antilles Enterprises, Inc., with capital stock of $10,000.00 divided into 100 shares of the par value of $100.00 each, of which Vose subscribed for 30 shares and Bishop and Jenckes for 35 shares each. On the same day Vose, Bishop, Jenckes and Antilles Enterprises, Inc., entered into the following stockholders' agreement:

## "STOCKHOLDERS' AGREEMENT

"AGREEMENT made this 25th day of November, 1953, between CHARLES REDFIELD VOSE, of Litchfield, Connecticut, referred to hereafter as "VOSE"; CORY BISHOP, of St. John, Virgin Islands, U. S. A., referred to hereafter as "BISHOP"; and DAVID JENCKES, of St. Thomas, Virgin Islands, U. S. A., referred to hereafter as "JENCKES"; and ANTILLES ENTERPRISES, INC., a Virgin Islands corporation, referred to as the "CORPORATION",

## "WITNESSETH

"WHEREAS, the individual parties have entered into a joint venture as to BISHOP'S Eight Hundred Fifty (850) acres on St. John, V. I., conveyed to him and wife by deed from Alvin C. Schlenker, dated June 13, 1952, recorded August 11, 1952, in Protocol 4E, P. 206, Sub. No. 218, as evidenced by agreement dated July 27, 1953, and a supplementary joint venture as to Smith and Falck property at Red Hook, St. Thomas, V. I., under contract dated September 25, 1953, as per agreement signed September 2, 1953; and

"WHEREAS, VOSE has to date advanced Fifty Thousand Dollars ($50,000.00) on St. John Venture and agrees to advance balance necessary to complete St. Thomas purchase:

"NOW, THEREFORE, it is mutually agreed:

"1. The CORPORATION has been organized in the Virgin Islands for One Hundred (100) shares of common stock at One Hundred ($100.00) Dollars per share. Title in both aforesaid property in St. Thomas and St. John ventures are to be put in the Corporation which will assume the mortgages thereon, and the debt for all moneys advanced by VOSE is to be owned [sic] and the stock issued in following proporitions [sic]:

| | |
|---|---|
| VOSE | 30 Shares |
| BISHOP | 35 Shares |
| JENCKES | 35 Shares |
| Total | 100 Shares |

"The consideration for the issuance of all shares shall be the transfer of all interests in Estates Rustenberg, Beverhoudtsberg, Guinea Gut and Sans Souci (St. John) to the CORPORATION

33

and the transfer by BISHOP to the CORPORATION of the $50,000 paid by VOSE for his interest in the aforementioned estates. BISHOP and JENCKES are immediately to endorse their certificates for their shares and deliver same to VOSE to hold until VOSE is repaid his advances, when the stock is to be redelivered to them. Meanwhile, they have the right to vote on stock, but all dividends, if any, are to be applied to reduction of debt due VOSE. Any salaries to be paid shall be reasonable and approved by the parties hereto. Accountings shall be rendered to VOSE of corporate activities and finances at least every three months.

"2. The stockholders agree that so long as they are alive, each shall not without consent of all otherwise encumber or dispose of the stock he now owns, or may hereafter acquire, except he may transfer all or part as gift to or for benefit of wife or other member of his direct family, who shall hold it subject to terms of this agreement. No stockholder may sell his stock until indebtedness to VOSE has been paid off, except with his written consent, and all certificates of stock of the CORPORA-TION owned by stockholders shall be endorsed with following statement:

'The shares of stock represented by this certificate are subject to the terms of an agreement between the stockholders and corporation dated November 25, 1953, a copy of which has been filed at the Office of the Corporation.'

"3. The stockholders agree to vote their stock to provide as follows:

(a) A Board of Directors of three (3) members, each to be the individual party hereto or his nominee, and to vote for the parties or their nominees, for the following offices:

President — Cory Bishop
Treasurer — Charles Redfield Vose
Secretary — David Jenckes

"4. In the event of death of VOSE, the survivors, together, or by the other if one refuses, shall have the right to purchase from VOSE Estate, his stock at a price which shall be the unpaid amount of moneys advanced by him, plus VOSE' share of un-distributed actually realized profits of CORPORATION up to time of his death, to be calculated by book value on said date.

"Payment for VOSE stock shall be made by paying ten (10%) percent on the exercise of the option and within six (6) months

after qualification of personal representative of VOSE, and the balance of ninety (90%) percent by three (3) notes for thirty (30%) percent each, with interest, one for each of three (3) successive years. While not in default, the purchasers shall have voting and dividend rights, and on full payment shall receive back their stock if then in the hands of VOSE or his Estate plus all of VOSE stock duly endorsed for transfer. Purchasers have privilege of prepayment of unpaid amounts on thirty (30) days written notice. In the event said option is not exercised against VOSE Estate, the CORPORATION shall have a maximum of five (5) years to pay all of said debt; notwithstanding the provisions of Paragraph Five (5) hereof;

"In case of death of either BISHOP or JENCKES, VOSE and the other survivor, together, or the other if one refuses, shall have the right to purchase from decedent's estate, his stock at book value, but no allowance for good will, payments to be made one-quarter ($\frac{1}{4}$) on exercise of the option to purchase and within six (6) months from qualification of deceased's representatives, and by three (3) notes for balance, one for each of three (3) successive years with interest, and with privilege of prepayment. While not in default, purchaser shall have voting and dividend rights, and on full payment, shall receive decedent's stock duly endorsed for transfer.

"5. The CORPORATION'S debt to VOSE on the St. Thomas land shall increase annually in the amount of 5% and the time limit on the debt shall be ten (10) years.

"6. All matters involving the major policies of the CORPORATION or the sale of the assets thereof, shall be determined upon by the unanimous consent of the stockholders of the CORPORATION.

"7. This agreement shall be binding upon and shall operate for the benefit of the stockholders and their respective executors, administrators, sucessors and assigns."

The foregoing agreement was signed by Vose, Bishop and Jenckes, individually, and by Bishop as President of Antilles Enterprises, Inc.

4. Pursuant to the foregoing agreement and in payment of their subscriptions to the stock of the corporation, Vose, Bishop and Jenckes caused the land in St. John, which had been devoted to their joint venture, to be conveyed to Antilles Enterprises, Inc.,

and the sum of $50,000.00 in cash, which had been paid in by Vose to the joint venture, to be transferred to Antilles Enterprises, Inc.

5. The land in St. John, which Bishop had purchased for $24,000.00 ($5,000.00 in cash and $19,000.00 secured by a mortgage), was placed on the books of Antilles Enterprises, Inc., at a valuation of $135,666.67, and the mortgage of $19,000.00 thereon was placed on the books as a liability of the corporation. The sum of $50,000.00 in cash which Vose had paid in to the joint venture was placed on the books in that amount. Of the property and cash amounting, net, to $166,666.67 thus received by the corporation upon its organization, $10,000.00 was credited on its books to capital stock in payment of the subscriptions of Bishop to 35 shares, Jenckes to 35 shares and Vose to 30 shares. The balance of $156,666.67 was credited to paid-in surplus and no part of it was credited to Vose as indebtedness or an advance.

6. Thereafter, by agreement between Vose, Bishop and Jenckes 20 shares of Antilles Enterprises, Inc., subscribed by and issued to Jenckes were transferred to Vose. On June 12, 1954, Vose, Bishop, Jenckes and Antilles Enterprises, Inc., executed a second stockholders' agreement identical in substance with the stockholders' agreement of November 25, 1953 except for the first sentence of paragraph 1 which in the new agreement, reflecting the transfer of 20 shares from Jenckes to Vose, read as follows:

"1. The CORPORATION has been organized in the Virgin Islands for One Hundred (100) shares of common stock at One Hundred ($100.00) Dollars per share. Title in both aforesaid property in St. Thomas and St. John ventures are to be put in the Corporation which will assume the mortgages thereon, and the debt for all moneys advanced by VOSE is to be owed and the stock issued in following proportions:

| | |
|---|---|
| VOSE | 50 Shares |
| BISHOP | 35 Shares |
| JENCKES | 15 Shares |
| Total | 100 Shares" |

By a supplemental agreement on June 19, 1954 paragraph 5 of the agreement of June 12, 1954 was amended by endorsement thereon to read:

"5. The CORPORATION'S debt to VOSE shall increase annually in the amount of 5% and the time limit on the debt shall be ten (10) years."

36

7. On July 19, 1954, by an assignment separate from the certificate Bishop assigned to Lind Weber 10 shares of his stock in Antilles Enterprises, Inc., subject to the stockholders' agreement of June 12, 1954. On December 24, 1955 a certificate for these 10 shares was issued to Lind Weber signed by Vose as treasurer. There is no evidence that Jenckes did not consent to this transfer and he ceased to be a stockholder on January 21, 1956.

8. On April 6, 1955 Bishop granted to Jenckes an option to purchase 5 shares of his stock in Antilles Enterprises, Inc., which option was assigned on January 6, 1956 by Jenckes to Vose. The evidence indicates that Vose exercised the option in January 1956. A certificate for the 5 shares was issued to him on April 3, 1956.

9. On April 16, 1955, by an assignment separate from the certificate, Bishop assigned to George T. Kelly III, trustee for Ethel May Pressey Below (or Bishop), 10 shares of his stock of Antilles Enterprises, Inc., subject to the terms of the stockholders' agreement of June 12, 1954. On April 26, 1955, Kelly executed a Declaration of Trust formally declaring that he held the 10 shares of stock of Antilles Enterprises, Inc., which Bishop had assigned to him, in trust for Ethel May Pressey Below, also known as Ethel May Bishop, for life with remainder to her daughter, Rosemary. In July 1955 Bishop, Ethel May Bishop, their daughter, Rosemary Fallonstein, and her husband, Leo Fallonstein, joined in executing an instrument entitled "Revocation of Trust, Conveyance and Assignment to Ethel May Bishop" which terminated the trust which Kelly had declared in favor of Ethel May Bishop for life with remainder to her daughter, discharged the trustee, and conveyed the entire title to the trust property to Ethel May Bishop absolutely and in fee simple free of said trust. No certificate was ever issued to Ethel May Bishop or her trustee representing these 10 shares of stock.

10. After January, 1956, 20 shares of stock of Antilles Enterprises, Inc., remained registered on the books of the corporation in the name of Bishop. The certificate, No. 11, evidencing these 20 shares was issued on April 3, 1956 in the name of Cory Bishop and was delivered to Vose and held by him up to the time of the death of Bishop. These 20 shares included the 10 shares which Bishop had assigned to Kelly as trustee for Ethel May Bishop apart from the certificate on April 16, 1955 as found in Finding No. 9.

11. During the early period of the operation of Antilles Enter-

prises, Inc., the relations between Bishop and Vose were harmonious. The land in St. Thomas referred to in Finding No. 2 was purchased and subsequently Bluebeard's Castle Hotel in St. Thomas was acquired from the Federal Government. Vose advanced large sums of money to the corporation for these purposes and for the renovation of the hotel.

12. In 1955 relations between Bishop and Vose became strained. Vose learned that Bishop, whose real name was Cornelius Comstock Below, had deserted his wife, that Cory Bishop was an assumed name and that the woman with whom he was living was not his wife although she had signed as his wife the conveyances of land which Bishop had made to the corporation. Bishop's wife, Ethel May Pressey Below, also known as Ethel May Bishop, entered the picture and it became imperative for the corporation to procure from her a release of her dower rights to the land which Bishop had conveyed to the corporation. This release was signed by Ethel May Bishop on April 29, 1955. It was in connection with the securing of this release that Bishop made the assignment to Kelly as trustee for Ethel May Bishop of 10 shares of stock in the corporation which is described in Finding No. 9. These developments and an increasing reluctance by Vose to advance funds to the corporation, among other things, accentuated the differences between Bishop and Vose.

13. The views of Bishop and Vose as to the proper policies to be pursued by the corporation with respect to its financing and the disposition of its assets became virtually irreconcilable in the fall and winter of 1955. Vose thereupon sought to secure the majority stock control of the corporation in order that the policies which he regarded as appropriate might be carried out by the corporation. Finally, on January 7, 1956 Vose obtained from Jenckes an agreement to sell to Vose Jenckes' 15 shares of stock. These shares were purchased by Vose and transferred to him on the books of the corporation on January 21, 1956. Vose thus became the owner of 65 of the 100 outstanding shares of stock of the corporation.

14. There is no credible evidence that Vose employed illegal or fraudulent means in opposing Bishop's policies and actions as president of the corporation, in seeking to promote his own policies for the corporation, or in obtaining from Jenckes the shares of stock which gave him majority stock control of the corporation. Nor is there credible evidence that the operations of the corporation

after January 21, 1956, when Vose became the majority stockholder, were other than for the best interests of the corporation or resulted in any financial loss to the corporation or any impairment in the value of Bishop's stock which would not have taken place if Vose had not acquired majority control.

15. On January 23, 1956 a special meeting of the stockholders of Antilles Enterprises, Inc., was held at which Vose presented the resignation of Jenckes as director and secretary, dated January 18, 1956, which was accepted. Vose also presented to the meeting charges against Bishop and Jenckes with respect to their conduct as directors and officers and evidence in support of the charges. The meeting held the following charges to be valid and established:

1) Gross mismanagement

2) Gross and willful neglect in the performance of their duties and obligations as officers and directors of the corporation

3) Gross incompetence

4) Deliberate and willful fraud practiced upon the corporation by Cory Bishop to the great detriment and loss of the corporation

5) Willful misappropriations of corporate funds, knowingly and willfully utilized for non-corporate purposes.

The evidence in the present cases supports the fourth and fifth charges above mentioned. Following the action above mentioned, the stockholders' meeting unanimously adopted the following resolution:

"Resolved that in view of the innumerable and extensive breaches committed by Bishop and Jenckes the said Stockholders' Agreement be and the same hereby is deemed as of no effect whatever as regards the election of Bishop and Jenckes as officers and directors, and on the further ground that in view of the resignation of Jenckes as officer and director, the said Stockholders' Agreement is incapable of being performed as regards elections, and consequently should be treated as no longer operative in regard to the election of officers and directors, although in full force and effect otherwise."

Thereupon, the stockholders elected a new board of directors, consisting of Vose, Lind Weber and Polly Jo Evans, thus replacing Bishop as a director. At a special meeting of the newly elected board of directors held on the same day Bishop was replaced by

Polly Jo Evans as president. The actions of both the stockholders' and directors' meetings were taken in Bishop's absence and without his consent.

16. There is no credible evidence that the actions taken by the directors and officers of Antilles Enterprises, Inc., in the conduct of the affairs of that corporation between January 23, 1956 and September 17, 1956 without the participation of Bishop resulted in any financial disadvantage to him as a stockholder which would not have occurred had he remained in office as a director and president of the corporation.

17. At the annual meeting of the stockholders of Antilles Enterprises, Inc., held on May 5, 1956 the capital stock was increased from $10,000, consisting of 100 shares of the par value of $100 each, to $100,000, consisting of 1,000 shares of the par value of $100 each. On May 8, 1956 notice was given to the stockholders of record on May 5, 1956 that they would be permitted to subscribe to 9 new shares at $100 each for each old share held on that date, such subscriptions to be made within 15 days of the mailing date of the notice via certified letter and to be received by May 24, 1956 accompanied by payment of 10% of the subscription. The notice stated that any unsubscribed stock would be offered to stockholders and officers who had already subscribed to their quota. Bishop did not consent to this increase of the capital stock but he did not protest against it and he did not subscribe to any of the additional shares. The books of the corporation indicate that the liabilities of the corporation exceeded the book value of its assets on May 5, 1956 so that the stock of the corporation had no book value on that date, and that the addition to the assets of the $90,000 subscribed for the additional shares of stock authorized on May 5, 1956 served to bring the total book value of the assets to a figure in excess of the liabilities, thereby restoring the book solvency of the corporation and giving its stock a book value.

18. Bishop died on September 17, 1956, domiciled in the Virgin Islands, leaving a will dated April 19, 1955, which was probated in this court on February 11, 1957, on which date Letters of Administration c.t.a. were issued to his widow, Ethel May Bishop, one of the parties to these actions.

19. On January 31, 1957, Vose filed in this court in the Estate of Bishop a paper in the following form:

40

"ESTATE OF CORY BISHOP, DECEASED,

"To C. R. VOSE, DEBTOR.

Creditor hereby claims the right to purchase from decedent's estate at book value, all stock owned by decedent pursuant to a stockholders' agreement dated June 12, 1954, and hereby makes demand therefor and tenders herewith $1.00 for all of decedent's capital stock at their book value, which is worthless.

By: [signed] C. R. Vose"

Accompanying this paper was Vose's check for $1.00 and a consolidated balance sheet of Antilles Enterprises, Inc., as of September 30, 1956, prepared by Joseph S. Greenberg, Certified Public Accountant, showing an excess of liabilities over assets of $2,142.57.

20. Prior to the date of Bishop's death entries had been made in the books of Antilles Enterprises, Inc., transferring from paid in surplus to indebtedness due Vose the sum of $45,000.00 out of the $50,000.00 originally contributed by Vose to the joint venture and paid in to Antilles Enterprises, Inc., as part of its initial capital pursuant to the stockholders' agreement of November 25, 1953. This change in the books was erroneous. Disregarding it, the book value of the capital stock of Antilles Enterprises, Inc., excluding any allowance for good will, as of September 17, 1956, was $44,832.50. The book value, excluding any allowance for good will, of each share of stock of Antilles Enterprises, Inc., outstanding on that date was $44.8325.

21. There is no credible evidence that Vose unlawfully or fraudulently deprived Ethel May Bishop of any personal property at the Hammerfarm in St. John to which she was entitled or that he was obligated to pay her rent for said farm which he failed to pay.

22. Vose died on July 10, 1957, domiciled in the Virgin Islands, leaving a will dated October 24, 1955, which was probated in this court on July 27, 1957, on which date Letters Testamentary were issued to Alfred M. Schaffer, Irving L. Young, James Alderman Evans, Jr. and William Houston Evans, who are parties to these actions.

## DISCUSSION

These two actions have been consolidated for trial and decision since they involve the same subject matter. Civil Action No. 230-1957 was brought by the executors of the Estate of Charles Redfield Vose, deceased, against Ethel

41

May Pressey Below, also known as Ethel May Bishop, individually and as administratrix c.t.a. of the Estate of Cornelius Comstock Below, also known as Cory Bishop, deceased, David Jenckes and Antilles Enterprises, Inc., Ethel May Bishop, individually and as administratrix c.t.a. of Bishop's estate, filed an answer and a counterclaim against the plaintiffs. Civil Action No. 138-1958 was brought by Ethel May Bishop, individually and as administratrix c.t.a. of the Estate of Cory Bishop, deceased, against Alfred M. Schaffer, et al., executors of the Estate of C. R. Vose, deceased, Alfred M. Schaffer, et al., officers and directors of Antilles Enterprises, Inc., and Ward and Virginia French, Brokers. These defendants filed an answer and counterclaim against the plaintiff.

The complaint in No. 230-1957 and the counterclaim in No. 138-1958 assert that the assignment by Bishop to a trustee for his wife, Ethel May Bishop, of 10 of his shares of stock in Antilles Enterprises, Inc., was made in violation of the stockholders' agreement of June 12, 1954, and was, therefore, invalid, that Bishop accordingly owned 20 shares of the stock at the time of his death and that Vose had validly exercised his option to purchase that stock but that the administratrix of Bishop's estate had not acted thereon. The complaint and counterclaim accordingly seek judgments determining that Bishop's assignment of the 10 shares of stock to the trustee for Ethel May Bishop was void, determining that Bishop owned 20 shares of the stock of Antilles Enterprises, Inc., at his death and ordering his administratrix to transfer these shares to the executors of Vose's estate pursuant to Vose's exercise of the option to purchase them upon payment of the purchase price determined by the court.

Ethel May Bishop's counterclaim in No. 230-1957 and her complaint in No. 138-1958 between them allege that Vose was merely a creditor of Antilles Enterprises, Inc.,

42

with a 30% interest during his life in its profits, that the increase of his interest from 30 shares to 50 shares by the agreement of June 12, 1954 was without consideration and ineffective and that the 20 shares reverted to Bishop on that date, that the sale by Jenckes of his remaining 15 shares to Vose was in violation of the stockholders' agreement and passed no title to Vose, that beginning in the summer of 1955 Vose began to block the efforts of Bishop to rehabilitate Antilles Enterprises, Inc., and establish it as a money-making concern, preventing him from selling property to pay the debts of the corporation, holding illegal corporate meetings, illegally maneuvering his ouster as director and president of the corporation, and flagrantly mismanaging the corporation so as to jeopardize and undermine the value of Bishop's stock. It is further alleged that Ethel May Bishop is the rightful owner of 10 shares of the stock of Antilles Enterprises, Inc., transferred to her trustee by Bishop, and that Vose's attempt to exercise an option to purchase Bishop's stock after his death was of no effect because the statement of the book value of the stock which accompanied it was fraudulent. Numerous other charges of fraud are made in these pleadings which need not be recited here. The counterclaim and complaint between them seek judgments interpreting the agreements between Bishop, Jenckes and Vose, declaring that the ouster of Bishop on January 23, 1956 as director and president of Antilles Enterprises, Inc., and the subsequent increase of the capital stock of the corporation were illegal, declaring that Ethel May Bishop is the owner of 10 shares of stock of the Corporation, declaring that Vose's attempted exercise of the option to purchase Bishop's stock by the offer of $1.00 for it was a nullity, appointing a receiver for Antilles Enterprises, Inc., enjoining the defendants from proceeding further with the sale of the assets of Antilles Enterprises, Inc., and awarding damages of $3,000,-

000 against Vose's estate. An application for an interlocutory injunction was also made by Ethel May Bishop in No. 138-1958 which I denied on December 16, 1958.

 During the course of the trial a large number of exhibits were offered in evidence by Ethel May Bishop and admitted en bloc upon the understanding that the Vose executors might subsequently move to strike out any or all of them. Such a motion was made by the Vose executors and I accordingly struck or permitted Ethel May Bishop to withdraw a large number of Bishop's exhibits. Decision was reserved on the motion to strike Bishop's exhibits C 6, C 35, C 36, C 39, C 41, C 54, C 71, C 95, C 185 and C 186 which were letters between counsel and client as to which a claim of privilege was asserted by the Vose executors. Under section 854 (1) of Title 5 of the Virgin Islands Code communications between lawyer and client in the course of that relationship and in professional confidence are privileged. However, paragraph (2) of section 854 excludes from the privilege "a communication if the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the legal service was sought or obtained in order to enable or aid the client to commit or plan to commit a crime or a tort". Ethel May Bishop urges that these letters are admissible under this exception. I cannot agree, since I am unable from the evidence to make the necessary finding. These exhibits are accordingly also stricken. Decision was also reserved on the motion to strike Bishop's exhibit C 56. The motion is denied as to this exhibit.

 The first matter for consideration is the effect of the stockholders' agreement of November 25, 1953. This is the crucial agreement since it was under its terms that Antilles Enterprises, Inc. was set up and the stock issued. The second or revised stockholders' agreement, dated June 12, 1954, repeated its terms and merely changed the

44

amounts of stock held by Jenckes and Vose to reflect a transfer of shares from the one to the other. When the agreements of joint venture dated July 27, 1953, and September 2, 1953, the stockholders' agreement of November 25, 1953, and the books and records of Antilles Enterprises, Inc., are carefully examined two things become clear.

First, the capital of the joint venture originally entered into by Vose, Bishop and Jenckes consisted of 850 acres of land in St. John which had been contributed by Bishop, of whom Jenckes was a partner, and $50,000 in cash which had been contributed by Vose and it was agreed that the profits were to be divided 30% to Vose and 35% each to Bishop and Jenckes.

Second, the original capital of Antilles Enterprises, Inc., likewise consisted of the 850 acres of St. John land and the $50,000 in cash which had comprised the capital of the joint venture to which the corporation succeeded.

This is clear from the language of paragraph 1 of the stockholders' agreement in which it is expressly stated that the consideration for the issuance of all 100 shares of the stock of the corporation shall be the transfer of all interests in the St. John land to the corporation "and the transfer by BISHOP to the CORPORATION of the $50,-000 paid by VOSE for his interest" in the St. John land. This is also clear from the books of account of the corporation in which the opening entries show the transfer to the corporation of the St. John land at a valuation of $135,-666.67 subject to a mortgage of $19,000.00 and the payment to the corporation of $50,000.00 in cash, a net total of $166,666.67, $10,000.00 of which was credited to capital stock in payment of the subscriptions of Bishop, Jenckes and Vose, and the balance of $156,666.67 to paid-in surplus.

I conclude that upon the incorporation of Antilles Enter-

prises, Inc., Vose, Bishop and Jenckes each became stockholders owning, respectively, 30, 35 and 35 shares of fully paid-up stock in the corporation and that Vose was not a creditor of the corporation so far as concerns any part of the original $50,000 contributed by him to the joint venture and later transferred by Bishop to the corporation under the stockholders' agreement.

It is true that there are many provisions in the stockholders' agreement directed to the protection of Vose as a creditor for advances to the corporation. The key to the scope of these provisions, however, is to be found in the second agreement of joint venture dated September 2, 1953, and in the second paragraph of the recital clauses and paragraph 5 of the stockholders' agreement. The agreement of September 2, 1953 stated that the funds for the purchase of the land in St. Thomas which the joint venturers then contemplated acquiring were to be advanced by Vose and subsequently repaid to him by the joint venture. The recital in the stockholders' agreement stated that Vose "agrees to advance balance necessary to complete St. Thomas purchase". Paragraph 5 provided for the treatment of the debt to Vose "on the St. Thomas land." As we have seen, when the corporation was formed the parties were about to purchase a large tract of land in St. Thomas for $300,000 and Vose did subsequently advance large amounts of money to the corporation for this and other purposes for which he received debentures of the corporation and thus acquired the status of a creditor. It was clearly these advances to which the stockholders' agreement referred and not the $50,000 originally contributed by Vose to the joint venture.

So far as concerns the 20 shares of stock transferred by Jenckes to Vose at or before June 12, 1954, which transfer is reflected in paragraph 1 of the revised stockholders' agreement of that date it need merely be pointed out that

46

these were fully paid shares in the hands of Jenckes which could be transferred by him to Vose for any consideration which he thought appropriate or as a gift, if he desired to make one. The transfer, therefore, vested title to these shares in Vose.

I conclude that Vose became a stockholder of Antilles Enterprises, Inc. at its incorporation and remained a stockholder until his death. The basic contention of Ethel May Bishop that Vose was solely a creditor of the corporation with merely the right to a share of its profits during his lifetime must, therefore, be rejected.

■ I turn then to the controversy as to whether Bishop owned 20 shares of the stock of Antilles Enterprises, Inc. at his death on September 17, 1956 or whether he had effectively transferred his beneficial interest in 10 of those shares to his wife, Ethel May Bishop, through his assignment of April 16, 1955 to her trustee Kelly. The stockholders' agreement prohibited each of the three stockholders, so long as he was alive, to dispose of his stock without the consent of all, except that he might "transfer all or part as gift to or for benefit of wife or other member of his direct family, who shall hold it subject to terms of this agreement." It is the contention of the executors of Vose's estate that Bishop's transfer of his interest in these 10 shares was in violation of these provisions of the agreement and was, therefore, ineffective to pass any interest to Ethel May Bishop. They argue that the transaction was not a gift but rather a transfer for a consideration in a marital settlement which did not come within the terms of the exception. I do not agree. On the contrary, I am satisfied that the transaction, if not a gift to his wife, was at the least a transfer of the stock for the benefit of his wife within the meaning of the exception contained in the agreement. By the subsequent transactions referred to in my findings of fact the right to these shares passed to Ethel May Bishop,

subject to Vose's right to retain the certificate for the shares under paragraph 1 of the stockholders' agreement until repaid his advances to the corporation, and any right which he might have under paragraph 4 of the stockholders' agreement, in case he should survive Bishop as in fact he did, to purchase these 10 shares as well as those shares then actually held by Bishop's estate, at their book value without allowance for good will. A fuller discussion of the validity and effect of Bishop's assignment of these shares is set out in my opinion in Re Below's Estate, 1958, 3 V.I. 300, 304–307, 162 F. Supp. 88, 90–91, to which reference is here made. What is there said is applicable here and I adhere to it.

This brings me to the question whether Vose did validly exercise the option given to him by paragraph 4 of the stockholders' agreement. The pertinent provisions of that paragraph are as follows:

"In case of death of either BISHOP or JENCKES, VOSE and the other survivor, together, or the other if one refuses, shall have the right to purchase from decedent's estate, his stock at book value, but no allowance for good will, . . ."

Bishop died on September 17, 1956 at which time Jenckes was no longer a stockholder of the corporation. Vose accordingly had the sole right to exercise the option to purchase the 20 shares of stock held by Bishop's estate and his widow as his assignee. He exercised this option by filing in this court in the Estate of Cory Bishop, Deceased, a paper claiming his right to purchase "from decedent's estate" all stock "owned by decedent." Accompanying this was a check for $1 and a balance sheet showing book insolvency of $2,142.57. I am satisfied that this was a sufficient exercise of Vose's option so far as concerns the 10 shares of stock of which Vose retained the beneficial ownership.

Whether Vose's filing in Bishop's estate of the paper claiming the right to purchase from the decedent's estate all stock owned by decedent "pursuant to a stockholders'

agreement dated June 12, 1954" amounted to a valid exercise of his option to purchase the 10 shares of which Ethel May Bishop was the beneficial owner is a more difficult question to answer. Certainly these shares were not "stock owned by decedent" beneficially, stock to the purchase price of which Bishop's estate would be entitled. And it is clear from the evidence that Vose knew of Ethel May Bishop's claim to be the owner of these shares and of her desire to have them registered in her name. The fact is, however, that these shares were never so registered but remained at all times prior to Bishop's death registered in his name along with his remaining 10 shares and the certificate for the 20 shares, registered in the name of Cory Bishop, was outstanding, and in the hands of Vose pursuant to paragraph 1 of the stockholders' agreement, at the time of Bishop's death. Bishop, and his administratrix after his death, accordingly had legal title to the 10 shares of stock of which Ethel May Bishop is the equitable owner, section 1, chapter 30, Title II, (1921) Code of St. Thomas and St. John, now 13 V.I.C. § 141, and his administratrix is, therefore, in a position to transfer the shares to whomsoever is legally entitled to them, whether it be Ethel May Bishop or Vose's estate. I think it follows that when Vose claimed the right to purchase from Bishop's estate all the shares owned by Bishop, he was entitled to rely on his knowledge that legal title to all 20 shares, including the 10 claimed by Ethel May Bishop, was in Bishop and that Bishop's administratrix could assign the certificate for all 20 shares to him, accounting to Ethel May Bishop for the purchase price of 10 of the shares if she proved herself entitled to them. There is no doubt that the stockholders' agreements contemplated that a surviving stockholder should have the right not only to purchase the shares held by a deceased stockholder at his death but also any shares which he might have transferred to his wife pursuant to paragraph 2 of

49

the stockholders' agreement. Nor is there any doubt in my mind that Vose intended to exercise that right. Although the matter is not wholly free from doubt I conclude that Vose validly exercised his option to purchase the 10 shares of stock beneficially owned by Ethel May Bishop. Since she is the equitable owner of these shares the purchase price to be paid for them may be paid directly to her rather than to Bishop's estate.

■■ Ethel May Bishop in her complaint and counter-claim has made very sweeping charges that by chicanery and fraud Vose blocked Bishop's efforts to put Antilles Enterprises, Inc. on a money-making basis, holding illegal meetings and illegally causing his ouster as director and president of the corporation, and that he flagrantly mis-managed the corporation in a way which jeopardized and undermined the value of Bishop's stock. Because of this alleged fraudulent and illegal conduct Ethel May Bishop asserts that Vose forfeited his right to exercise his option to purchase Bishop's stock at its book value and should, instead, be compelled to respond in substantial damages to Bishop's estate and herself for the injuries they suffered at his hands. The difficulty with these contentions is that the credible evidence does not support them. I cannot find from the evidence that Vose was guilty of any fraud in his relations toward Bishop or in his actions as a stockholder, director or officer of Antilles Enterprises, Inc. Nor do I think that Vose violated the stockholders' agreement in causing Bishop's removal as director and president of the corporation. For the evidence supports the findings of the stockholders at the special stockholders' meeting of January 23, 1956 that Bishop had forfeited his right to continue in these offices by reason of his misappropriation of corporate funds and other fraud practiced upon the corporation. It is settled law that a director or officer of a corporation must perform his duties faithfully. He must

act in the utmost good faith and may not deal with the funds and property of his corporation or utilize the influence and advantage of his office for any but the common good. Higgins v. Shenango Pottery Company, 3 Cir. 1958, 256 F.2d 504; 3 Fletcher Cyclopedia Corporations § 990; 13 Am. Jur. Corporations § 997; 19 C.J.S. Corporations §§ 761, 764. The rights given to Bishop by paragraph 3 of the stockholders' agreement to be elected director and president were necessarily subject to this requirement of the law that he perform the duties of these offices faithfully, which requirement was to be treated as an implied term of the agreement. 12 Am. Jur. Contracts § 240; 17 C.J.S. Contracts § 330. Bishop having failed to perform the statutory duty which thus formed an implied term of paragraph 3 of the stockholders' agreement Vose was relieved from his obligation thereunder so far as regards the continued election of Bishop to these offices. Certainly Vose was not required to afford Bishop further opportunity for unfaithfulness to the corporation. So far as concerns the value of Bishop's stock in the corporation there is not the slightest evidence that this or any other action of Vose jeopardized or impaired it. I must, accordingly, reject in toto Ethel May Bishop's charges of fraud and improper dealing or breach of the stockholders' agreement on the part of Vose.

The increase in the capital stock of Antilles Enterprises, Inc., which Vose caused to be authorized in May 1956 was made without the affirmative consent of Bishop. I need not decide whether this was in technical violation of paragraph 6 of the stockholders' agreement for Bishop did not protest the action and it is clear that it did not prejudice the value of Bishop's stock. Indeed it appears that on the contrary he was benefited by it since his stock which had no book value prior to the increase acquired a book value as the direct result of the receipt by the corporation of $90,000 in additional capital from the other stockholders.

51

■ I come then to the question of the amount of the book value on September 17, 1956 of the 20 shares of stock of Antilles Enterprises, Inc., which are here involved. The term "book value" as applied to corporate stock, ordinarily means the net value, as shown on the corporate books of account of all the assets of the corporation after deducting all its liabilities. Lane v. Barnard, 1919, 185 App. Div. 754, 173 N.Y.S. 714; Fleming v. Fleming, 1930, 211 Iowa 1251, 230 N.W. 359, 369; Davis v. Coshnear, 1930, 129 Me. 334, 151 Atl. 725; Corbett v. McClintic-Marshall Corporation, 1930, 17 Del. Ch. 165, 151 Atl. 218; Mills v. Rich, 1930, 249 Mich. 489, 229 N.W. 462; In re Reben's Will, 1952, Sur. Ct., 115 N.Y.S.2d 228; 11 C.J.S. p. 521. See, also, annotations 33 A.L.R. 366 and 51 A.L.R.2d 606. In other words, it is measured by the net worth of the corporation as reflected on its books of account and does not reflect either the current market value of the stock or the current market value of the assets of the corporation unless those values are reflected on the books.

■ ■ It is true that while the phrase "book value" refers to the value shown on the books of account it implies that those books are kept in accordance with generally approved accounting practice and that books not so kept may be adjusted to conform to approved practice in determining the book value of the stock. Aron v. Gillman, 1955, 309 N.Y. 157, 160, 128 N.E.2d 284, 286, 51 A.L.R.2d 598, 601. Ethel May Bishop argues in this connection that it is approved accounting practice to revalue land on the books periodically so as to reflect its current market value rather than its cost and that the books of Antilles Enterprises, Inc. should be thus adjusted in determining the book value of the stock. If this were done, she says, the value of the stock would be greatly increased since the market value on September 17, 1956 of the land and hotel owned by the corporation was very much greater than their cost as shown on the books.

52

This contention cannot be sustained. For it is the recognized accounting practice *not* to make periodic adjustments of land accounts to reflect changes in market value either up or down. In Paton's Accountants' Handbook, 3d ed., 1946, p. 602, it is said, citing Montgomery, Auditing Theory and Practice:

"Land should not be written up (except in special circumstances) although it may be clear that its value has increased. An increase in book value of land may mean simply higher taxes with no increase in earning power. The business receives no benefit except in case of sale or liquidation, and an adjustment of book value need not be made until such an event occurs. Operations based on cost value may show a fair return whereas on a basis of appreciated value the return may be abnormally low. In no event should land appreciation be used to wipe out operating losses."

Furthermore, in any event, no credible evidence was offered as to the market value of the land and the hotel on September 17, 1956. I am satisfied from the evidence that except for one erroneous entry to which I shall refer the books of Antilles Enterprises, Inc., were kept in accordance with recognized accounting principles and practice.

 The parties to a contract which refers to the book value of stock may, of course, by agreement modify the strict meaning of the phrase. Except for the matter of good will to which I am about to refer, however, I find no indication in this case that the parties had any other intention than that the option price for which they stipulated should be measured by the net worth of the corporation as reflected on the books of account which they themselves set up and which were kept under their direction. That this is so becomes even clearer when it is recalled that the parties stipulated that the book value should be computed without allowance for good will, thus indicating that the only modification of strict book value which they had in mind was the elimination of any value for good will which might be shown on the books at the time of a stockholder's death.

 There is, however, one adjustment in the values shown by the books to which Bishop's estate and Ethel May Bishop are entitled here. Greenberg, the accountant who prepared from the books the balance sheet of September 30, 1956 which showed a capital deficit, testified that he had "corrected" the books by transferring from paid-in surplus to indebtedness $45,000 of Vose's original capital contribution before preparing that balance sheet. This was clearly erroneous for the reasons already given in discussing the organization of the corporation. The entry must, therefore, be reversed before the book value of the stock can be determined. Vose's exhibit 28 is a balance sheet of Antilles Enterprises, Inc. as of September 17, 1956, prepared by Greenberg from the books of the corporation. I am satisfied that, except for the transfer of $45,000 from paid-in surplus to indebtedness which it also reflects, it is a correct portrayal of the assets and liabilities of the corporation as shown on the books. It shows total assets of $1,636,646.21 and total liabilities of $1,636,813.71, reflecting a capital deficit of $167.50. Eliminating the $45,000 improperly included in the liabilities reduces them to $1,591,813.71. Thus adjusted, the balance sheet shows an excess of assets over liabilities of $44,832.50 which represents the book value of the 1,000 shares of capital stock of the corporation on September 17, 1956, the day of Bishop's death. The book value of each share was, therefore, $44.-8325 and the book value of 10 shares $448.33. Vose's estate must accordingly pay $448.33 to Bishop's estate and $448.33 to Ethel May Bishop for the 20 shares of stock which stood registered in Bishop's name on the day of his death. Each payment will of course carry interest from the date of exercise of the option.

 As we have seen, Vose was entitled to exercise the option to purchase at Bishop's death the 20 shares of stock of Antilles Enterprises, Inc. which then stood regis-

tered in Bishop's name, including the 10 shares which Bishop had assigned, without transfer of the certificate, to Ethel May Bishop. We have also seen that he duly exercised the option. Antilles Enterprises, Inc. was and is a closely held corporation. I am satisfied, therefore, that Vose's executors are entitled in these actions to a judgment directing specific performance of the option agreement. Mutual Oil Co. v. Hills, 9 Cir. 1918, 248 Fed. 257; Weiss v. Smith, D.C. Conn. 1952, 106 F. Supp. 53, aff. 2 Cir. 1952, 198 F.2d 268, cert. den. 344 U.S. 831, 73 S. Ct. 36, 97 L. Ed. 647; 81 C.J.S. Specific Performance § 70. The judgment will, therefore, direct the assignment and transfer by the administratrix of Bishop's estate to the executors of Vose's estate of the 20 shares of stock registered in Bishop's name at his death upon payment of the purchase price of $448.33 with interest to Bishop's estate for the 10 shares beneficially owned by the estate and of $448.33 with interest to Ethel May Bishop for the 10 shares beneficially owned by her. Such an assignment by Bishop's administratrix of all the shares will be sufficient to put both legal title and beneficial ownership in Vose's estate. For Bishop's estate has legal title to all the shares including the 10 beneficially owned by Ethel May Bishop. And upon the payment to her Ethel May Bishop's beneficial interest will pass to Vose's Estate. Consequently a transfer of legal title to the 10 shares by Bishop's administratrix to Ethel May Bishop by a formal assignment and issuance of a new certificate to her and an immediate reassignment of the certificate by her to Vose's estate would be a useless formality.

The other contentions of Ethel May Bishop have been considered but have been found wholly unsupported by the evidence. They are accordingly rejected and require no discussion here.

Upon consideration of the facts I reach the following:

## CONCLUSIONS OF LAW

1. Charles R. Vose was a stockholder of Antilles Enterprises, Inc., with all the rights of a stockholder under the stockholders' agreements of November 25, 1953, and June 12, 1954, from November 25, 1953 to the date of his death.

2. Ethel May Bishop is the beneficial owner, subject to the terms of the stockholders' agreement of November 25, 1953, of 10 shares of stock of Antilles Enterprises, Inc., which were assigned to her trustee by Cory Bishop by assignment dated April 16, 1955.

3. Cory Bishop at the time of his death on September 17, 1956 had legal title, subject to the terms of the stockholders' agreement of November 25, 1953, to 20 shares of stock of Antilles Enterprises, Inc. Of these 20 shares, 10 shares were beneficially owned by Cory Bishop and 10 shares were beneficially owned by Ethel May Bishop, as stated above in Conclusion No. 2.

4. Upon the death of Cory Bishop, Charles R. Vose became entitled, pursuant to the terms of the stockholders' agreements of November 25, 1953 and June 12, 1954 to purchase at their book value without allowance for good will the 20 shares of stock to which Cory Bishop held legal title at the time of his death.

5. Charles R. Vose validly exercised on January 31, 1957 his option to purchase said shares of stock and his estate is entitled to the assignment and transfer of said shares upon payment of the book value thereof with interest.

6. The Estate of Charles Vose, deceased, is obligated to pay Ethel May Bishop for the 10 shares of stock beneficially owned by her their book value amounting to $448.33 and to pay the Estate of Cory Bishop, deceased, for the 10 shares of stock beneficially owned by him their book value amounting to $448.33, with interest in each case from January 31, 1957.

7. Neither Ethel May Bishop nor the Estate of Cory

Bishop, deceased, is entitled to damages or any other relief in these actions than as above indicated.

8. A judgment will accordingly be entered

(a) directing the executors of the Estate of Charles R. Vose, deceased, to pay to Ethel May Bishop, administratrix c.t.a. of the Estate of Cory Bishop, deceased, the sum of $448.33 with interest from January 31, 1957 and to pay to Ethel May Bishop, individually, the sum of $448.33 with interest from January 31, 1957;

(b) directing Ethel May Bishop, administratrix c.t.a. of the Estate of Cory Bishop, deceased, upon the making of the said payments, to assign and transfer to the Estate of Charles R. Vose, deceased, the 20 shares of stock of Antilles Enterprises, Inc. which were registered in the name of Cory Bishop at the time of his death and are represented by Certificate No. 11;

(c) adjudging that upon the making of such payments and assignment and transfer all the right, title and interest of the Estate of Cory Bishop, deceased, and Ethel May Bishop in and to the said 20 shares of stock of Antilles Enterprises, Inc., or any of them, shall vest in the Estate of Charles R. Vose, deceased;

(d) denying all other prayers for relief of the plaintiffs and counterclaimants in these actions; and

(e) awarding costs to Ethel May Bishop, individually and as administratrix c.t.a. of the Estate of Cory Bishop, deceased, defendant and counterclaimant in Civil Action No. 230-1957 and plaintiff in Civil Action No. 138-1958 and an attorney's fee of $1,000.