## (December 13, 1965)

■ OLLIE CLAIRE, Respondent, v. HARRIET WIGDOR, as Administratrix of the Estate of DAVID FEIN, Deceased, Appellant.— In an action to compel specific performance of an alleged agreement to sell shares of stock, in which defendant asserted counterclaims to recover the purchase price, etc., defendant appeals from an order of the Supreme Court, Kings County, entered March 4, 1965, which: (1) granted plaintiff's motion (a) to dismiss her counterclaims for insufficiency; (b) to discontinue the action, without prejudice; (c) to vacate defendant's notice to arbitrate; and (2) denied defendant's cross motion for summary judgment on her counterclaims. Defendant also appeals from the judgment, entered March 16, 1965, pursuant to said order. Order modified on the law and the facts as follows: (1) by striking out its first and second decretal paragraphs; (2) by substituting therefor a new decretal paragraph denying plaintiff's motion to discontinue the action; (3) by amending its third and fourth decretal paragraphs so as to grant plaintiff's motion to dismiss the second or "further" counterclaim only, without costs; severing said counterclaim only; and directing entry of judgment dismissing said counterclaim only, without costs; (4) by striking out its sixth decretal paragraph, denying defendant's motion for summary judgment; and (5) by substituting therefor a decretal paragraph granting defendant's motion for summary judgment to the extent of directing plaintiff to pay, in exchange for defendant's decedent's stock, the book value thereof in accordance with the sixth and thirteenth paragraphs of the stockholders' agreement annexed to the complaint, the said value to be determined at a hearing to be held upon a date to be fixed upon application of either or both parties. As so modified, the order is affirmed, with $10 costs and disbursements to defendant. Judgment vacated, without costs, and with leave to plaintiff to enter a new judgment in conformity herewith, dismissing the second or "further" counterclaim designated in defendant's answer only. In November, 1945, prior to the formation of a close corporation, plaintiff and defendant's intestate (the sole and equal stockholders) entered into a stockholders' agreement which provided, in part, that upon the death of either party the survivor "shall have the right to purchase the stock of the deceased from the estate of the deceased at any time within forty-five (45) days from the date of death", and that: "The purchase price for said stock shall be the book value thereof as reflected in the corporate books". In November, 1962, within the 45-day period following the death of defendant's intestate, plaintiff, without specifying any sum of money, generally notified the defendant by letter that he thereby exercised his right to purchase her decedent's stock at the book value provided by the stockholders' agreement. In March, 1963 plaintiff informed defendant that the book value of her decedent's stock was $15,619.26; and he offered to pay that sum together with a corporate debt owing to her decedent. Plaintiff and defendant, however, were unable to agree upon the book value of the stock. Defendant, rejecting plaintiff's computation of book value, contended that the value fixed in the corporate books for good will was inadequate, that a physical inventory of corporate assets had not been made, and that certain corporate assets were not reflected in the corporation's books. Plaintiff thereafter commenced this action for specific performance but approximately

one year later moved, *inter alia,* for an order discontinuing the action. Plaintiff claimed that, by rejecting his estimate of the book value of defendant's stock, defendant had rejected his "offer," that thus no contract had been formed and that he was free to discontinue the action. Special Term granted plaintiff's motion, holding that plaintiff did not undertake to purchase decedent's stock but had merely made "an offer to purchase the stock if the terms could be agreed upon." In our opinion, Special Term erroneously conceived plaintiff's letter of November, 1962 to be an offer when it clearly constituted an acceptance by an optionee. That acceptance created a contract from which plaintiff could not be disengaged by defendant's rejection of plaintiff's subsequent, unilateral computation of the book value of her decedent's stock. On this appeal, plaintiff argues that his acceptance was ineffective because "book value * * * as reflected in the corporate books" is a standard too indefinite for enforcement of the optionor's offer. In our opinion, however, the price-fixing standard provided by the parties' stockholders' agreement is a legally enforcible determinant (*Aron* v. *Gillman,* 309 N. Y. 157). Computing book value may often involve inquiries concerning the conclusiveness of corporate books of account and financial reports (see *Schaffer* v. *Below,* 174 F. Supp. 505, affd. 278 F. 2d 619; Stans and Goedert, What is Book Value?, 99 Journal of Accountancy 38 [1955]; ann., 51 ALR 2d 606 [1957]). Nevertheless, as *Aron* v. *Gillman* (*supra*) indicates, if accepted accounting principles are used and book entries appear to be correct and comprehensive, a book value for closely-held stock is objectively ascertainable and thus sufficiently provides a standard for the granting of equitable relief. Beldock, P. J., Ughetta, Christ, Hill and Hopkins, JJ., concur.